587 So.2d 519 (1991)
RYBOVICH BOAT WORKS, INC. and Robert C. Fisher, Appellants/Cross Appellees,
v.
Randall W. ATKINS As Trustee, Appellee/Cross Appellant.
No. 90-1050.
District Court of Appeal of Florida, Fourth District.
September 25, 1991.
Rehearing and Certification Denied November 14, 1991.
William G. Christopher, Steven L. Schwarzberg and Patti A. Velasquez of Honigman, Miller, Schwartz and Cohn, for appellants/cross appellees.
Jay D. Schwartz, Alberto A. Macia and Ethan P. Minsky of Shea & Gould, Miami, for appellee/cross appellant.
*520 WARNER, Judge.
This is an appeal and a cross appeal with respect to a summary judgment entered on a breach of contract action for the purchase of real estate. The appellants/sellers claim the trial court erred in granting summary judgment for the appellee/buyer on the breach of contract claim, and the buyer claims that the trial court erred in granting summary judgment on his affirmative defenses. We reverse as to the summary judgment in favor of buyer and affirm as to the summary judgment in favor of seller on buyer's affirmative defenses.[1]
On June 18, 1985, an agreement for purchase and sale option was entered into between appellants, collectively referred to herein as seller, and appellee Atkins, hereinafter referred to as buyer, for certain real property in Palm Beach County. In the detailed agreement seller agreed to convey marketable title free and clear of any liens and encumbrances except those set out in an exhibit to the contract. Within fifteen days after the execution of the contract Seller was also to furnish buyer with a commitment for title insurance.
The contract provided for closing in paragraph 8 as follows:
CLOSING
This transaction shall be closed ... at the offices of Seller's attorney... .
[T]he date and time of closing ... shall be established by purchaser, by giving at least seven (7) days notice thereof to seller.
Upon default the contract provided for the retention by seller as liquidated damages of all sums paid as deposits pursuant to the contract. Any notice or elections under the contract which any party would be required to make were required to be given in writing. Furthermore, the parties agreed that the agreement could not be changed except in writing signed by the parties; any waiver of rights must be in writing; and that no waiver of any right shall be deemed a waiver of any subsequent right or obligation. Finally, the contract provided that time was of the essence of the transaction and could be extended only by a written agreement between the parties.
Between September 1985 and November 1987 the agreement was amended in writing nine times. Eight of the nine amendments were executed to extend the closing date. As consideration for each amendment an additional deposit was put up so that the total of deposits held by the sellers in escrow was one million dollars. Amendment eight extended the time setting the closing date and also included an acknowledgment by purchaser that seller had fully performed its obligations under the agreement.
Amendment Nine provided:
The date and time of Closing (the "Closing Date") shall be established by Purchaser, by giving at least seven (7) days notice thereof to Seller; provided that the Closing Date shall not be later than December 5, 1987.
In the Ninth Amendment buyer again acknowledged and confirmed seller had fully performed all of his obligations under the agreement and that all of the provisions of the agreement except as expressly modified by the Ninth Amendment remained in full force and effect.
The closing did not occur on or before December 5, 1987. There was no written agreement between the parties to extend the time for closing after December 5, 1987. A proposed Tenth Amendment was being negotiated but was never executed.
On February 11, 1988, seller informed the escrow agent that the buyer was in default by failing to close by December 5, 1987. On the next day the seller presented letters of credit, representing portions of the contract deposit, to the bank for payment.
Several letters were sent between the parties regarding the termination of the *521 contract. Buyer complained that because of a dispute with a licensee occupying a portion of the premises seller could not close because it could not tender full performance of its obligation. The sale never closed and seller then filed suit against the purchaser for breach of the agreement and to quiet title. The buyer answered and raised various affirmative defenses.
Seller first moved for summary judgment on buyer's affirmative defense that seller could not have closed on the property because of title defects. That motion was granted. Both seller and buyer then filed motions for summary judgment on the breach of contract count. In its order granting summary judgment for buyer, the trial court acknowledged that the buyer gave no notice of closing date as contemplated by the original agreement as well as all of the amendments to the contract and that the last possible closing date went by without buyer's notice to close. However, the trial court reasoned that seller should have known at least six days before the closing date that buyer had not given the notice. The court postulated that seller might then have set a closing date itself and established that it was ready, willing and able to close. The court concluded that "the only fair construction of the facts in this case is that by the parties' inaction, there was either a breach by both occurring at the same time or an abandonment of the contract provision calling for a closing on or before December 5, 1987. In either event plaintiffs cannot recover."
In making this finding, the trial court ignored the language of the written agreements.
"Courts may not rewrite, alter, or add to the terms of a written agreement between the parties and [they] may not substitute their judgment for that of the parties in order to relieve one from the alleged hardship of an improvident bargain." International Expositions, Inc. v. City of Miami Beach, 274 So.2d 29 (Fla.App.3d 1973).
Jacobs v. Petrino, 351 So.2d 1036, 1039 (Fla. 4th DCA 1976). It appears that the trial court's reading of the agreement is contrary to its unambiguous meaning and implicitly disregarded both the time of the essence clause and the anti-waiver clause of the contract.
A time of the essence clause is "not a stock phrase but was intended to give the sellers an immediate right to cancel the contract if the buyer were unable to timely demonstrate an ability to purchase." Garcia v. Alfonso, 490 So.2d 130, 131 (Fla. 3d DCA 1986). Where time is of the essence no notice of a default is required. Delta Mobile Homes, Inc. v. Ehmann, 275 So.2d 269 (Fla. 3d DCA 1973). In this case the time of the essence provision in the contract clearly required the buyer to set a date and time for closing. When the buyer failed to set the closing date and failed to close by the latest date called for in the agreement, he was in default. The trial court erred in finding that the seller should have set a closing time and date and tendered its performance even when the buyer had not performed in accordance with its terms. By failing to close on December 5, 1987, buyer defaulted under the terms of the contract.
Seller was entitled to a summary judgment, unless there was an issue of material fact as to the affirmative defenses raised by buyer. The buyer claimed that through the course of dealings between the parties and the numerous extensions seller waived or was estopped to enforce the time of the essence clause. Although such time of the essence provisions may be waived by the conduct of the parties, see Coppola Enterprises, Inc. v. Alfone, 531 So.2d 334 (Fla. 1988), and "summary judgment is particularly unsuitable in those cases where the facts and circumstances indicate the possibility of waiver and estoppel", Dusich v. Horley, 525 So.2d 507 (Fla. 2d DCA 1988), this contract contained an anti-waiver provision which provided:
Except as otherwise expressly provided herein, no waiver of any rights or obligations hereunder shall be deemed to have occurred unless in writing signed by the party against whom such waiver is asserted and no waiver shall be *522 deemed a waiver of any other or subsequent right or obligation... .
Thus under the anti-waiver provision of this agreement the time of the essence provision could not have been waived unless there was a writing signed by the party against whom the waiver was asserted.
In Raimondi v. I.T. Chips, Inc., 480 So.2d 240, 241 (Fla. 4th DCA 1985), this court quoting Philpot v. Bouchelle, 411 So.2d 1341 (Fla. 1st DCA 1982), held that where a lease contract contained an anti-waiver provision, the acceptance of late performance by the lessor would not constitute a waiver of the lessee's rights to subsequently declare a default. The court explained that while generally acceptance of benefits or even a time of the essence clause can be waived by the party to whom the benefit inures, the parties can contractually modify this rule by the inclusion of an anti-waiver clause. We think a similar result obtains here.
Even though amendments to the time-of-the-essence clause were agreed to in the past subsequent to the expiration of the past closing dates, the contract still provided that "no waiver shall be deemed a waiver of any other or subsequent right or obligation... ." The trial court erred in failing to give effect to these provisions. Because the contract was unambiguous, buyer's affirmative defenses of waiver and estoppel were defeated as a matter of law by the provisions of the contract itself. Summary judgment for the sellers should have been granted.
We also affirm the trial court's granting of summary judgment in sellers' favor as to the other affirmative defenses raised by the buyer that there were defects in Fisher's title which rendered it unmarketable. The trial court was correct in noting that by the various amendments, the buyer had acknowledged and confirmed that seller had fully performed all of the obligations under the agreement. Therefore, the buyer had contractually and in writing waived any right to claim additional defects.
Based upon the foregoing we reverse the summary judgment in favor of appellee and remand for directions to enter a final summary judgment in favor of the appellant.
ANSTEAD and STONE, JJ., concur.
NOTES
[1] This is the second appearance of this case before us. We decided a companion issue in Atkins v. Rybovich Boat Works, Inc., 561 So.2d 594 (Fla. 4th DCA 1990), quashed, 585 So.2d 270 (Fla. 1991). The effect of the Supreme Court's ruling is to reinstate the summary judgment dismissing count II of the complaint. Therefore, the Final Summary Judgments appealed herein constitute a final disposition of the entire case in the trial court.