889 So.2d 887 (2004)
ARVILLA MOTEL, INC., a Florida corporation, Appellant,
v.
Stewart SHRIVER, Appellee.
No. 2D04-1395.
District Court of Appeal of Florida, Second District.
December 3, 2004.
Rehearing Denied January 12, 2005.
*888 Patricia Fields Anderson, St. Petersburg, for Appellant.
Peter D. Graham of Zacur & Graham, P.A., St. Petersburg, for Appellee.
VILLANTI, Judge.
Arvilla Motel, Inc. (Arvilla), challenges a final judgment that required it to specifically perform on a contract to sell the Arvilla Motel, valued at over 1.5 million dollars, to Stewart Shriver. The dispute between Arvilla and Shriver centers around the closing date and a "time is of the essence" clause. The trial court found that the "time is of the essence" clause was either waived or modified and Shriver did not breach the contract by failing to timely close. We disagree and therefore reverse the trial court's order granting specific performance.
On July 19, 2002, Casimir and Joann Kowalczyk, the sole shareholders in Arvilla, agreed to sell their gulf-front motel on Treasure Island to their next-door neighbor, Shriver, for $1,550,000. Casimir, as president of Arvilla, and Shriver signed a standard form commercial real estate contract. *889 The contract contained a "time is of the essence" clause in bold letters on the first page. The contract set the closing date for the sale of the motel on September 30, 2002. On July 25, 2002, within one week of the date of the original contract, Shriver and Casimir specifically agreed to move the closing date to August 26, 2002, in a signed addendum to the contract. The Kowalczyks testified that the closing date was important to them because they were moving to Chicago and wanted to close before Labor Day weekend.
Over the next month, Shriver and the Kowalczyks had a rather informal business relationship. The contract set deadlines for delivering the title commitment, a survey showing the coastal construction control line, environment reports, rent rolls, permits, certificates of occupancy, and other records. Although the Kowalczyks delayed in complying with these deadlines, Shriver never complained.
As the closing date approached, confusion erupted. The general counsel of the bank handling Shriver's assumption of Arvilla's loan, John Van Voris, said that he called the Kowalczyks' attorney, David Bacon, on August 16. Van Voris said that he spoke to assistant Jodi Furlong, who told him that the parties would establish an exact closing date when Bacon returned from vacation. Furlong denies that this conversation occurred. On August 21, 2002, Shriver and the bank's lending officer, Richard Callihan, visited the Kowalczyks at the Arvilla Motel. During that visit, someone[1] told the Kowalczyks that their attorney, Bacon, would not be able to close until August 30 because he was on vacation. The Kowalczyks were visibly upset and said, "[O]kay, we'll contact Mr. Bacon." When Shriver and Callihan left the motel, Casimir immediately called Bacon's office to speak to Furlong. Furlong told Casimir that closing was still set for August 26, but the bank would not be ready to close until August 30. Meanwhile, Shriver immediately went to the office of his real estate broker, Michael Seimetz. He told Seimetz that the closing would be postponed because the bank could not finish the paperwork until August 30. Shriver told Seimetz that the Kowalczyks had been informed of the postponement and showed little or no reaction. Consequently, Seimetz immediately faxed a letter to Bacon's office, informing him that the parties had all met that day to discuss postponing the closing until August 30. Bacon was not in his office because he was on vacation. However, upon receiving the fax, Furlong called Bacon to tell him about the letter and her conversation with Casimir. Bacon dictated and sent a letter to Seimetz on the same day, reiterating that the closing must occur on August 26, in accordance with the contract's terms. On August 23, Shriver's attorney, Peter Graham, appeared on the scene, sending a letter to Bacon stating that the closing could not occur until August 30 because he had not had sufficient time to review the title commitment. Bacon responded on August 26, stating that the contract had never been amended to extend the closing date and assuring Graham that there were "no title matters of concern."
In the meantime, the Kowalczyks accepted a backup offer for $1,600,000 from another buyer, James Maurer. The backup offer was set to close on August 27 if the August 26 closing with Shriver did not go through. August 26 came and went without a closing. Late in the day, Casimir notified Shriver that the contract was *890 terminated for failure to close. On August 27, the Kowalczyks prepared to close the deal with Maurer, but were unable to because Shriver filed a lis pendens on the property. The Kowalczyks instead sold all the stock in their company, Arvilla, to Maurer and moved to Chicago. Nevertheless, the bank continued to draft loan papers for Shriver, which were not actually finalized until September 10.
In October 2002, Shriver sued Arvilla for specific performance, claiming that the Kowalczyks had agreed to close the transaction on August 30, 2002. After a nonjury trial, the court concluded that Arvilla had either waived or modified the "time is of the essence" clause and ordered specific performance of the contract.[2]
A "time is of the essence" clause is not necessarily a "stock phrase." Rybovich Boat Works, Inc. v. Atkins, 587 So.2d 519, 521 (Fla. 4th DCA 1991). Where it clearly appears from the contract that time is essential, courts will recognize the parties' expressed intention. Id. However, this court warned against trying to "achieve this result by merely putting into the contract the words `time is of the essence of this contract.'" Jackson v. Holmes, 307 So.2d 470, 472 (Fla. 2d DCA 1975) (quoting 3A Corbin, Contracts § 715 (1960)). "[T]o give effect to such a cryptic provision, [the court must know]: What performance at what time is a condition of which party's duty to do what?" Id. at 472 (quoting 3A Corbin, Contracts § 715). We also quoted Corbin's advice not to apply a general provision that time is of the essence to all of the many "promises for sundry performance, varying in amount and importance," because parties often insert the provision in the contract without any realization of its significance. Id."In short, a `time is of the essence' provision will be given effect in an equitable proceeding [provided] it is shown to be clearly applicable to the contract requirement against which it is sought to be applied." Id. (refusing to apply a "time is of the essence" clause contained within a paragraph concerning the ultimate closing to a provision concerning bank loan certification).
In Arvilla's case, there was an express "time is of the essence" clause in the contract between Arvilla and Shriver. The first page of the contract plainly states in bold letters, "Time is of the essence in this Contract." While this clause was contained in a standard printed form, the parties clearly intended it to apply to the closing date. It is contained under the heading "PURCHASE AND SALE," apparently referring to ultimate sale of the motel. Jackson warns against finding a general "time is of the essence" provision applicable to all of the many promises for sundry performance. Here, Casimir and Shriver specifically agreed in an addendum to move the closing date to over a month earlier than specified in the contract  the closing date was singled out as being significant. There was an expressed "time is of the essence" clause in the contract, and *891 the addendum, which referenced the contract, specifically addressed an earlier closing date, signifying that it was the intention of the parties to close on August 26.
Because the record reflects that the parties clearly intended to make time essential as to the closing date, we conclude that Arvilla had "an immediate right to cancel the contract if the [buyer was] unable to timely demonstrate an ability" to perform. See Garcia v. Alfonso, 490 So.2d 130, 131 (Fla. 3d DCA 1986). Arvilla, the nondefaulting party, was not required to grant an extension of time for the closing and was within its rights to declare forfeiture after Shriver made no attempt to close on August 26. See Seabreeze Rest., Inc. v. Paumgardhen, 639 So.2d 69 (Fla. 2d DCA 1994) (finding that where express language of the contract made time of the essence with regard to a November 30 closing date, seller had right to refuse purchaser's request for extension and could thereafter, on December 2, demand release of $10,000 escrow deposit because the purchaser failed to close by November 30). Because there was a valid "time is of the essence" clause that specifically applied to the closing date, we turn to the trial court's ruling that it was either modified or waived.
Shriver argues that the Kowalczyks orally agreed to extend the closing date until August 30. A written contract may be modified by an oral agreement if the parties have accepted and acted upon the oral agreement in a manner that would "work a fraud on either party to refuse to enforce it." W.W. Contracting, Inc. v. Harrison, 779 So.2d 528, 529 (Fla. 2d DCA 2000) (citing Prof'l Ins. Corp. v. Cahill, 90 So.2d 916 (Fla.1956), and Jupiter Square S.C. Assocs., Inc. v. Tomary, Inc., 571 So.2d 538 (Fla. 4th DCA 1990)). An oral modification is permissible even when "the written contract contains a provision prohibiting its alteration except in writing," as in the Arvilla Motel contract. See id. (citing Prof'l Ins. Corp., 90 So.2d at 918).
Evidence presented in favor of an oral modification was that either Shriver or his bank's loan officer told the Kowalczyks that their attorney, Bacon, would be unable to close on August 26 because he was on vacation and that the closing would be on August 30. The Kowalczyks then shrugged their shoulders and said, "[O]kay, we'll contact Mr. Bacon." Shriver testified that Casimir seemed upset about the change but agreed. Joann testified that she and her husband did not agree, but she was just flipping her hair and her husband was cracking his neck. She admitted that their gestures could have been interpreted as acquiescence. The problem with deeming this exchange between the Kowalczyks, Shriver, and Callihan a modification is that there is no clear agreement between the parties. Shriver and Callihan were not offering to change the closing date  they were merely relaying a message they had heard through the grapevine from the bank's general counsel who possibly heard it from Bacon's assistant. The Kowalczyks' gestures and comments suggest confusion, not acceptance. Importantly, the Kowalczyks never explicitly agreed to postpone the closing date  if anything, their words suggested that more investigation was needed before agreeing to a modification. The Kowalczyks then rejected any possibility of changing the closing date through their attorney, Bacon. Bacon's August 21 letter to Seimetz unequivocally stated that August 26 was the firm closing date according to the contract. See Tesini v. Zawistowski, 479 So.2d 775, 776 (Fla. 4th DCA 1985) ("An attorney acting for his client within the scope of his authority binds his client."). Therefore, there is no competent *892 substantial evidence supporting a finding of oral modification of the closing date.
We turn next to the court's finding that Arvilla waived its right to require strict performance of the closing date.[3] The courts have defined "waiver" in the context of contracts for the purchase and sale of real estate as "a voluntary, intentional relinquishment of a known right or advantage" by the purchaser or seller. Major League Baseball v. Morsani, 790 So.2d 1071 (Fla.2001). In Fireman's Fund Insurance Co. v. Vogel, 195 So.2d 20, 24 (Fla. 2d DCA 1967), this court commented:
The most frequent and generally accepted definition of the term "waiver" is the intentional relinquishment of a known right, or the voluntary relinquishment of a known right, or conduct which warrants an inference of the relinquishment of a known right. 92 C.J.S. Waiver p. 1041. When a waiver is implied from ..., the acts, conduct, or circumstances relied upon to show waiver must make out a clear case. Gilman v. Butzloff, 155 Fla. 888, 22 So.2d 263 (1945); Masser v. London Operating Co., 106 Fla. 474, 145 So. 72 (1932). Furthermore, waiver does not arise from forbearance for a reasonable time. Gilman v. Butzloff, supra. There can be no waiver unless the party against whom the waiver is invoked was in possession of all the material facts. 92 C.J.S. Waiver p. 1059.
See also Cont'l Real Estate Equities, Inc. v. Rich Man Poor Man, Inc., 458 So.2d 798, 799 (Fla. 2d DCA 1984); Am. Somax Ventures v. Touma, 547 So.2d 1266, 1268 (Fla. 4th DCA 1989).
In support of his assertion of waiver, Shriver alleges that there were many other deadlines in the contract with which Shriver and Arvilla did not comply. However, the record reveals a rather informal relationship between Shriver and the Kowalczyks, who were next-door neighbors. Neither party insisted on strict compliance with the relatively minor deadlines in the contract. For instance, the contract required the Kowalczyks to deliver the rent rolls and permits within five days of the effective date of the contract. The Kowalczyks never delivered these items because they were using the rent rolls in the day-to-day business of running the motel. The permits were hanging on the bulletin board behind the motel's front desk. Shriver never complained and was freely invited to inspect the motel and paperwork. The parties' lack of concern about other minor deadlines is demonstrated by the fact that they never adjusted the other deadlines when they moved the closing date up to over a month earlier than the original contract specified. None of the minor delays by the Kowalczyks constituted a voluntary, intentional relinquishment of their right to insist on strict performance of the closing date on August 26.
Looking at the evidence most favorably to Shriver as the prevailing party, the evidence presented at trial simply does not demonstrate that Arvilla either agreed to modify the contract by postponing the closing date or intentionally relinquished a known right. We therefore reverse the trial court's order granting specific performance of the contract to sell the Arvilla *893 Motel to Shriver and remand for the trial court to enter judgment in favor of Arvilla.
Reversed.
SALCINES and SILBERMAN, JJ., Concur.
NOTES
[1] Shriver and the Kowalczyks all testified that Callihan announced the postponement. Interestingly, Callihan himself denied ever telling anyone that the August 26 closing date would be postponed.
[2] According to the transcript, the court ruled, "Dates, times being of the essence, it doesn't justify the closing dates; it applies to other dates as well. And of course ... that can be waived or the parties can act to the contrary. It can be agreed to expressly or implied, or it can be changed by the parties, can be changed orally. Therefore, to me, taking everything into consideration, the equities lie with the plaintiff. So I'm going to give [judgment] for the plaintiff." We believe, and Shriver conceded at oral arguments, that the court actually said, "times being of the essence, it doesn't just apply to the closing dates, it applies to the other dates as well," essentially ruling that the Kowalczyks either waived or modified the closing date by not abiding by all of the other deadlines set in the contract.
[3] Arvilla alleges that Shriver did not clearly plead waiver in his avoidances to Arvilla's affirmative defenses as required by Florida Rule of Civil Procedure 1.100(a). We find that Shriver did properly plead waiver. His reply to Arvilla's answer states, "[P]laintiff alleges that any failure of plaintiff to close on August 26, 2002, was due to defendant's delay in performing its obligations under the contract." While perhaps inarticulate, Shriver's reply essentially argues that the seller cannot take advantage of a delay that he condoned or caused, a crucial issue in the matter of waiver.