[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 16, 2006
THOMAS K. KAHN
CLERK

_____

No. 06-10804
Non-Argument Calendar
_____

D. C. Docket No. 03-60130-CV-KAM

UNITED STATES OF AMERICA,

Plaintiff,

versus

RANCH LOCATED AT 5600 SOUTHWEST 61ST
AVENUE, DAVIE, FLORIDA,

Defendant-Appellee,

JOSE FERNANDO PUELLO-MONTOYA,

Claimant-Appellee,

THE MORA GROUP, INC.,

Interested-Party-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(November 16, 2006)**

Before BLACK, MARCUS and FAY, Circuit Judges.

PER CURIAM:

This appeal involves a Florida land sale and purchase contract arising out of a government forfeiture in rem action, 21 U.S.C. § 881(a)(6). The Mora Group, Inc. ("MGI") appeals the district court's denial of its motion to enforce, and grant of Jose Fernando Puello-Montoya's estate's ("Estate") motion to set aside, the court's previous order directing the sale of the Defendant Ranch. The district court found that MGI breached the contract for sale and purchase between MGI and the Estate by failing to post the required deposit. For the reasons set forth more fully below, we affirm.

## I. Background

In February 2003, the government filed a civil complaint seeking forfeiture in rem against a ranch in Davie, Florida on the grounds that the ranch's owner, Jose Fernando Puello-Montoya ("Puello"), had purchased the ranch using the proceeds of drug trafficking. At some time thereafter, Puello died and his wife, Paola Jabba, was substituted as the claimant to the ranch. In May 2004, the government, Jabba, as the heir and personal representative of the Puello's estate, and MGI filed a joint agreed motion for private sale of the ranch from the Estate to MGI by the closing date of June 22, 2004. The district court granted the motion

2

and directed the sale of the ranch "pursuant to the terms of the deposit receipt and contract for sale and purchase . . . ." Nonetheless, in July 2004, the government filed a status report indicating that the ranch had not been sold by June 22, 2004, that MGI had requested that the Estate commence probate proceedings to eliminate any potential claims from any creditors of the Estate, and that the government was unsure of the time required to complete the probate proceedings.

The contract between MGI and the Estate required MGI to make a $50,000 deposit into the escrow account of Cuevas & Ortiz, P.A. by 14 days from the effective date, meaning no later than March 16, 2004. The contract contained the following paragraphs regarding default:

> (a) Seller Default: If for any reason other than failure of Seller to make Seller's title marketable after diligent effort, Seller fails, refuses or neglects to perform this Contract, Buyer may choose to receive a return of Buyer's deposit without waiving the right to seek damages or to seek specific performance . . . .

> (b) Buyer Default: If Buyer fails to perform this Contract within the time specified, including timely payment of all deposits, Seller may choose to retain and collect all deposits paid and agreed to be paid as liquidated damages or to seek specific performance . . . .

The contract also provided that, "[t]ime is of the essence for all provisions of this Contract."

The record also contained the following documents, which evidence the undisputed chain of events between the parties: (1) March 1, 2005 letter from the

3

Estate's counsel to MGI's counsel requesting proof of the deposit; (2) March 15, 2005 letter from Stuart A. Lipson, Esq. stating that his law office had received $1,658,000 toward the purchase of the ranch and that the money had been received "via a pending wire transfer"; (3) March 16, 2005 letter from MGI's counsel to the Estate's counsel stating that MGI was holding $1,648,000 in escrow "which is more than sufficient to close the above-referenced transaction"; (4) March 17, 2005 letter from the Estate's counsel to MGI's counsel requesting proof of the deposit; (5) March 18, 2005 letter from the Estate's counsel to MGI's counsel stating that, if the Estate did not receive proof of the deposit by March 21, 2005, it would consider the contract in breach and void.

On March 28, 2005, MGI filed a motion to enforce the court's order directing the sale of the ranch. MGI asserted that the Estate had "dragged its feet in obtaining an [o]rder from the Probate Court[,]" and, thus, the closing had been substantially delayed. MGI further alleged that, despite its contention that all the cash necessary to close was in an attorney's trust account, the Estate had attempted to "slither" from the sales contract by demanding to see, prior to closing, proof that MGI had made the required deposit. The Estate, along with two intervenors, then filed a joint motion to set aside the order directing the sale of the ranch, arguing that MGI had defaulted on the sale and purchase contract by failing to make the

4

required deposit into the designated escrow agents' accounts. The Estate further contended that the default constituted a material breach that entitled the Estate to void the contract.

After an evidentiary hearing, at which MGI admitted that it had not made the deposit as required in the contract, the district court denied MGI's motion to enforce the contract and granted the Estate's motion to set aside the agreed order directing the sale of the ranch. The district court found that MGI's assertion that it was ready, willing, and able to close did not constitute full performance under the contract because MGI had not timely made the deposit, and, therefore, had breached the contract. The court further found that the Estate was not required to provide notice of the default because the contract contained a time-is-of-the-essence provision, and, thus, the Estate was entitled to terminate the contract. The court also rejected MGI's argument that the Estate did not timely invoke the time-is-of-the-essence provision on the ground that, once the Estate learned of the missing deposit, which was almost a year after the contract was signed, the Estate timely moved to terminate the contract.

## II. Discussion

### A. Jurisdiction

Upon receipt of MCI's appeal, we certified the following jurisdictional

5

question to the parties for further briefing:[1]

> Whether the district court's remaining rulings in its December 22, 2005, order dispose of all of the claims as to all of the parties or are otherwise final or interlocutorily appealable. See 28 U.S.C. §§ 1291, 1292; Forgay v. Conrad, 47 U.S. (6 How.) 201, 204, 12 L.Ed. 404 (1848); Lockwood v. Snookies, Inc. (In re F.D.R. Hickory House, Inc.), 60 F.3d 724, 726-27 (11th Cir. 1995); Haney v. City of Cumming, 69 F.3d 1098, 1101 (11th Cir. 1995); Altantic Fed. Sav. & Loan Ass'n v. Blythe Eastman Paine Webber, Inc., 890 F.2d 371, 375-76 (11th Cir. 1989); United States v. One Parcel of Real Prop., 767 F.2d 1495, 1497 (11th Cir. 1985); Pitney Bowes, Inc. v. Mestre, 701 F.2d 1365, 1368 (11th Cir. 1983).

MGI responded that we had jurisdiction because the district court's order was final as to MGI's claim. MGI alternatively maintained that we had jurisdiction under any of the several exceptions to the finality rule. Specifically, MGI argued that its claim was entirely separate from the other issues in the case and that the court's order conclusively determined its interest because the property could now be sold to another party. The Estate responded that we are without jurisdiction because the court's order was an interlocutory order that did not fall within any of the exceptions to the final order rule.

To be appealable, an order either must be final or fall into a specific class of interlocutory orders that are made appealable by statute or jurisprudential

---

[1] We also issued a jurisdictional question concerning potential intervenors: "Whether the district court's order denying the Conrad Angelino's and Edwin Melendez's motion to intervene is immediately appealable." We do not address that issue here, however, as the parties have agreed that it is not relevant to the instant appeal.

6

exception. 28 U.S.C. §§ 1291, 1292; <u>Atl. Fed. Sav. & Loan Ass'n v. Blythe Eastman Paine Webber, Inc.</u>, 890 F.2d 371, 375-76 (11th Cir. 1989). "A final decision is one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." <u>Pitney Bowes, Inc. v. Mestre</u>, 701 F.2d 1365, 1368 (11th Cir. 1983) (quotation omitted). If, however, the district court certifies for immediate review an order that disposes of one claim or party in a multi-party lawsuit by stating that there is no just reason for delay and entering a judgment, we have jurisdiction provided that the order is a final order. Fed.R.Civ.P. 54(b); <u>Am. Family Life Assurance Co. v. United States Fire Ins. Co.</u>, 794 F.2d 629, 630 (11th Cir. 1986).

There are three judicially created exceptions to the finality rule: (1) the collateral order doctrine; (2) the doctrine of practical finality; and (3) the marginal finality rule. <u>Atl. Fed. Sav. & Loan Ass'n</u>, 890 F.2d at 375-76; <u>In re Martin Bros. Toolmakers, Inc.</u>, 796 F.2d 1435, 1437 (11th Cir. 1986). We conclude that jurisdiction is not provided here under either the doctrine of practical finality or the marginal finality rule. Thus, the only issue is whether we have jurisdiction under the collateral order doctrine.

"Under the collateral order doctrine, a court may exercise appellate jurisdiction if the challenged order: (1) conclusively determines a disputed

7

question; (2) resolves an important issue completely separate from the merits of the action; and (3) is effectively unreviewable on appeal from final judgment." United States v. Bowman, 341 F.3d 1228, 1236-37 (11th Cir. 2003); Coopers & Lybrand v. Livesay, 437 U.S. 463, 468-69, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351 (1978); Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546, 69 S.Ct. 1221, 1225-26, 92 L.Ed. 1528 (1949); Atl. Fed. Sav. & Loan Ass'n, 890 F.2d at 376. An order is considered effectively unreviewable if the appellant would suffer irreparable harm or would not be able to obtain an adequate remedy if unable to seek appellate review until the entry of a final judgment. Bowman, 341 F.3d at 1237.

Given the facts in this case, we determine that we have jurisdiction under the collateral order doctrine because (1) the order at issue resolved a disputed question concerning MGI's contractual rights to the ranch, (2) the question was separate from the merits of the government's underlying civil forfeiture action, and (3) the order will not be effectively reviewable on appeal from a final judgment because a judgment in the underlying forfeiture action would be an insufficient remedy for MGI where the ranch would be sold to another party.

### B. Breach of the Contract

MGI argues on appeal that the Estate could not properly use the time-is-of-the-essence provision against it because the Estate had breached the contract by

8

failing to diligently clear the title defects. MGI contends that the record established that the Estate wanted to get out of the contract because it had received a better offer, but that fact should not carry any weight with regard to MGI's contractual rights. It also asserts that the Estate waived the time-is-of-the essence provision by contributing to the delay in closing, and that the Estate was not harmed by the lack of a deposit because MGI was ready, willing, and able to close.

We review de novo a district court's interpretation of an agreement under traditional contract principles. Frankenmuth Mut. Ins. Co. v. Escambia County, Fla., 289 F.3d 723, 728 (11th Cir. 2002). A district court's findings of fact are reviewed for clear error. Daewoo Motor America, Inc. v. General Motors Corp., 459 F.3d 1249, 1256 (11th Cir. 2006).

According to Florida contract law, "[w]here time is of the essence no notice of a default is required." Rybovich Boat Works, Inc. v. Atkins, 587 So. 2d 519, 521 (Fla. Dist. Ct. App. 1991). "A time of the essence clause is not a stock phrase but was intended to give the sellers an immediate right to cancel the contract if the buyer were unable to timely demonstrate an ability to purchase." Id. (quotation omitted). Nonetheless, time-is-of-the-essence clauses may be waived by the conduct of the parties. Id. Waiver in the context of Florida contracts for the purchase and sale of real estate is defined as "a voluntary, intentional

9

relinquishment of a known right or advantage by the purchaser or seller." Arvilla

Motel, Inc. v. Shriver, 889 So. 2d 887, 892 (Fla. Dist. Ct. App. 2004) (quotation

omitted). "There can be no waiver unless the party against whom the waiver is

invoked was in possession of all the material facts." Id.

Here, the contract was clear that time was of essence with regard to MGI's

deposit. Moreover, it is undisputed that MGI never made the deposit as specified

in the contract. Thus, the district court did not err in finding that MGI breached the

contract when it failed to timely comply with the deposit requirement because no

notice of the default was required. See Rybovich, 587 So. 2d at 521. As to MGI's

argument that the Estate's conduct after MGI failed to make the deposit constituted

a waiver of the time-is-of-the-essence provision, that argument is without merit

because, as the district court found, the Estate did not have knowledge of the

missing deposit until MGI admitted such. MGI does not dispute that fact on

appeal, but instead argues that the Estate could not use the time-is-of-the-essence

provision against it because the Estate contributed to the delay in closing. Under

Florida law, the Estate could not have waived the provision where it did not have

knowledge that MGI failed to make the deposit, and, when it learned of the

potential breach, it contacted MGI for proof of the deposit.

Finally, to the extent that MGI asserts on appeal that the Estate failed to

10

diligently clear title, wanted to void the contract because it had received a better offer, or generally contributed to the delay in closing, the record establishes that MGI did not raise those issues before the district court and, thus, we will not address them here. See Access Now, Inc. v. Southwest Airlines Co., 385 F.3d 1324, 1331 (11th Cir. 2004). This is especially the case because MGI's various arguments do not meet any of the five exceptions we have identified as warranting consideration when not raised in the district court, nor does MGI argue as such. See id. at 1332 (explaining that we will address an argument raised for the first time on appeal if: (1) it involves a pure question of law that would result in a miscarriage of justice if not addressed; (2) the appellant raises an objection that he had no opportunity to raise in the district court; (3) the interest of substantial justice is at stake; (4) the proper resolution is beyond any doubt; or (5) the issue presents significant questions of general impact or great public concern).

### III. Conclusion

Upon review of the record, and consideration of the parties' briefs and the relevant law, we conclude that, under Florida contract law, MGI breached the contract for sale and purchase of the Defendant Ranch because it failed to post the required deposit where time was of the essence. Accordingly, the district court's order denying MGI's motion to enforce, and granting the Estate's motion to set

11

aside, the previous order directing sale of the Ranch is

**AFFIRMED.**