971 So.2d 998 (2008)
Joan HENLEY, Appellant,
v.
Linda MacDONALD, individually, Appellee.
Nos. 4D06-4324, 4D06-4614.
District Court of Appeal of Florida, Fourth District.
January 9, 2008.
*999 Steven A. Smilack, Pompano Beach, for appellant.
Robert E. O'Connell of Robert E. O'Connell, P.A., Boca Raton, for appellee.
SHAHOOD, C.J.
Joan Henley appeals an order granting summary judgment and final order of summary judgment in favor of Linda MacDonald, whom Henley sued for breach of contract. We reverse because there is a material question of fact as to whether the parties agreed to extend the closing date of the contract based on Paragraph VII of the contract, which provides for the transfer of marketable title.
Henley ("buyer") entered into a written contract with MacDonald ("seller") for the purchase of a single family home in Pompano Beach, Florida. This contract specified a closing date of September 6, 2005.
On September 6, 2005, the parties met at the subject property to do a final walk-through inspection. The seller noticed a small burnt spot on the floor and called the fire department. The fire department came to the house and explained that the problem was not something they dealt with and that it was a matter of code enforcement. The fire department called for a code enforcement officer and when the officer showed up he issued a code violation to the seller for electrical problems and another for the construction of an addition without a building permit.
The buyer decided not to close on the property because she believed the code violations put a cloud on the title, rendering it unmarketable. The buyer then claims that the seller agreed to postpone the closing until the violations were corrected. The seller claims that she did not agree at any time to reschedule the closing to a later date. On September 7, 2005, the buyer faxed to the seller an extension of time in order for the seller to rectify the code violations. The seller did not sign this form.
Subsequently, the code violations were corrected and the buyer asked to close on the house; the seller refused. The buyer filed a complaint against the seller alleging breach of contract for failing to close on the subject property. The seller filed a motion for summary judgment, which was *1000 granted by the trial court. Final judgment for the seller was thereafter entered.
"Summary judgment is appropriate where, as a matter of law, it is apparent from the pleadings, depositions, affidavits, or other evidence that there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law." Vaughan v. Boerckel, 963 So.2d 915, 919 (Fla. 4th DCA 2007).
The buyer argues that the code violations run with the land and make the title unmarketable because they would subject the buyer to administrative proceedings and/or litigation after closing.
The seller argues that code violations do not render a title unmarketable and even if they did, the buyer waived any defect by failing to provide written notice of any defects after receipt of a clean title and waived any defects at closing by agreeing to an "as is" rider.
The violations in question were rendered pursuant to section 162.09(1), Florida Statutes (2005), which entitles county organizations to fine those who violate county code ordinances. These fines, if left unpaid, "may be recorded in the public records and thereafter shall constitute a lien against the land on which the violation exists and upon any other real or personal property owned by the violator." § 162.09(3), Fla. Stat. (2005). "[C]ode violations `run with land' and subsequent purchasers can be held responsible for bringing their property up to code." Monroe County v. Whispering Pines Assocs., 697 So.2d 873, 875 (Fla. 3d DCA 1997).
Marketable title has been defined as:
[N]ot merely a title valid in fact but a title that must be such as to make it reasonably certain that it will not be called in question in the future so as to subject the purchaser to the hazard of litigation. . . . It must be, as is sometimes said, a title which can be sold to a reasonable purchaser or mortgaged to a person of reasonable prudence, and which is not subject to such a doubt or cloud as will affect its market value.
Adams v. Whittle, 101 Fla. 705, 135 So. 152, 155 (1931) (citation omitted). Unpaid fines on the property subject it to future litigation, creating an encumbrance on the property that is a paradigm of unmarketability. See Chafetz v. Price, 385 So.2d 104, 106 (Fla. 3d DCA 1980).
However, city code violations have been found to render title unmarketable only where the contract specifically warrants against such code violations. See, e.g., Rodriguez v. Leonard, 477 So.2d 19 (Fla. 3d DCA 1985). Paragraph VII of the contract provides for marketable title:
Seller shall convey marketable title subject to . . . prohibitions and other requirements imposed by governmental authority . . . provided, that there exists at Closing no violation of the foregoing and none prevent use of the Property for Residential purpose(s).
The buyer argues that it was because of this apparent unmarketability that the seller agreed to extend the closing date. The buyer testified in deposition to this claim:
Q: Okay. Did you not tell her that you were not going to close on this property because of the electrical problem and this other room?
A: That is not what I said. I said that there is a title issue now, you know, the fact of the electrical issue and that they mentioned that there is a possibility that the room was not permitted and I said, well, we have got to clear that up before we have clear title and we can close and she was agreeing with me and she said she would let me know what it would take to get it put together.
*1001 The seller in her affidavit stated "I at no time agreed orally or in writing to reschedule the closing to a later date."
Pursuant to the contract, the parties agreed not to allow a waiver of any contractual term without putting it in writing, signed and delivered by the party to be bound. Paragraph V of the contract provides that "No modification to or change in this Contract shall be valid or binding upon the parties unless in writing and executed by the parties intended to be bound by it." This language prevents an oral waiver or modification of the closing date. See, e.g., Bradley v. Sanchez, 943 So.2d 218 (Fla. 3d DCA 2006); Rybovich Boat Works, Inc. v. Atkins, 587 So.2d 519, 522 (Fla. 4th DCA 1991). However, "under certain circumstances, written contracts can be modified by a subsequent oral agreement of the parties even though the written contract purports to prohibit such modification." Wilson v. Woodward, 602 So.2d 547, 549 (Fla. 2d DCA 1992).
We find that the buyer's testimony and the language of Paragraph VII of the contract are sufficient to defeat the seller's motion for summary judgment. See Quest Air S., Inc. v. Memphis Group, Inc., 733 So.2d 1109, 1110 (Fla. 4th DCA 1999) ("If the record reflects the existence of genuine issues of fact or the possibility of any issue, or if the record raises even the slightest doubt that an issue might exist, that doubt must be resolved against the party moving for summary judgment.").
Accordingly, we reverse and remand this cause for further proceedings.
Reversed and Remanded.
TAYLOR, J., concurs.
FARMER, J., concurs in conclusion only.