SUAREZ, J.
 

 Open Permit Services of Florida, Inc. (“Open Permit”), appeals a final Order Compelling Compliance with Final Judgment which requires Open Permit, the buyer, and Thomas Scott Curtiss (“Cur-tiss”), the seller, to comply with the terms and conditions of a contract for the purchase and sale of real property. We affirm in part the trial court’s final order as there was substantial competent evidence to support the trial court’s findings and interpretation of the sales contract as to the repair costs of the property properly charged to the buyer. We reverse in part the costs charged to the buyer to satisfy the back taxes and liens.
 

 On January 6, 2005, the parties entered into a Contract for the purchase and sale of real property. At issue in this appeal are three provisions of the Contract. The first issue concerns the risk of loss provision that states:
 

 16. RISK OF LOSS: If the improvements are damaged by fire or other casualty, before delivery of the deed and can be restored to substantially the same condition as now existing within a period of 60 days thereafter, Seller may restore the improvements and the Closing shall be extended accordingly. If Seller fails to so restore the Property, Buyer shall have the option of (a) taking the Property in “as is” condition, together with the insurance proceeds, if any, or (b) cancelling this Contract and the Deposit shall forthwith be returned to Buyer, and Buyer and Seller shall be relieved, as to each other, of all obligations under this Contract.
 

 The Contract provides in its maintenance provision that:
 

 17. MAINTENANCE: Between the Effective Date and Closing, the Property,
 
 [2]
 
 including lawn, shrubbery and pool, if any, shall be maintained by Seller in the condition as it exists as of the Effective Date, ordinary wear and tear excepted.
 

 The second issue concerns the marketability of title provision that states:
 

 8C. DELIVERY, EXAMINATION:
 

 If any title defects render the title unmarketable, Seller shall use diligent effort to cure such defect.... If Seller shall fail to cure such defects within the 90 day period, Buyer shall have the option of (1) accepting title as it is; or (2) demanding a refund of the Deposit, in
 
 *824
 
 which case, the Deposit shall forthwith be returned to Buyer, and Buyer and Seller shall be relieved, as to each other, of all obligations under this Contract.
 

 A Financing Rider was attached to the Contract which provided for a new purchase money mortgage in the amount of $130,000.00. The property was sold in an “as is” condition. The closing originally was scheduled for January 18, 2005.
 

 On February 16, 2005, Open Permit initiated an action for specific performance to enforce the Contract for the purchase and sale of the house. On March 29, 2006, a final default judgment was entered in favor of Open Permit, and the trial court ordered Curtiss forthwith to convey the property to Open Permit under the terms set forth in the Contract. The Final Judgment was affirmed by this Court. See
 
 Curtiss v. Open Permit Servs., Inc.,
 
 955 So.2d 579 (Fla. 3d DCA 2007). The parties agreed on a new closing date. At the pre-closing walk-through, it was discovered that the contracted-for fixtures, cabinets, and appliances had been removed from the house. Prior to closing, Open Permit also discovered that property taxes remained unpaid and liens had been recorded against the property. Included in the HUD 1 closing Settlement Statement were line items deducting from the purchase price the cost of the missing fixtures and the costs to bring the taxes current and to satisfy liens. Curtiss objected on grounds that the terms of the Contract did not provide for deductions for these items from the purchase price and that the buyer, Open Permit, should bear the risk of the loss. Open Permit moved for an Order Compelling Compliance with the Final Judgment to require that Curtiss convey the property in the condition as it existed when the Contract was entered into, that the property be conveyed free of liens and that the seller provide financing, as agreed, in the amount of $130,000.00 under the terms of the Contract. Curtiss raised, as an affirmative defense, that the loss to the property was a casualty within the meaning of paragraph 16 of the sales contract, and therefore, Open Permit had only two options pursuant to that paragraph: to take the house in an “as is” condition or to take back the deposit and be relieved of all obligations under the Contract. Because Open Permit only could take title “as is” or cancel the Contract and demand return of the deposit, Curtiss argued against enforcement of the marketability of title clauses under paragraphs 8C and 9 the Contract, and against charging costs of bringing taxes current and satisfying liens to the seller.
 

 The trial judge held evidentiary hearings on August 3, 2007, September 18, 2007, and October 24, 2007. The trial judge found no testimony or other evidence establishing that Curtiss was involved in the removal of the fixtures. Therefore, as he was not involved in the removal of the fixtures, the trial judge held that the loss was a casualty pursuant to paragraph 16. In the Order Compelling Compliance with Final Judgment, the trial judge determined, therefore, that the portion of the purchase price which had been escrowed on the HUD 1 closing statement for the repair of the premises was not provided for in the Contract. Pursuant to paragraph 16, Open Permit’s only options were to take the property in the “as is” condition or to take back the deposit and-be relieved of all obligations under the Contract. The trial court ordered that, under the terms of paragraph 8C of the Contract, Open Permit could not deduct from the purchase price at closing to pay the back taxes or liens. The trial court held that, pursuant to pax-agraph 16C, Open Permit could only take title to the property “as is” or could, once again, cancel the Contract and demand return of the
 
 *825
 
 deposit. Open Permit appeals the Order Compelling Compliance with Final Judgment, contending that the trial court erred in not ordering specific performance with the repair costs and the costs to satisfy the back taxes and liens charged to Curtiss.
 

 Open Permit first argues on appeal that the trial judge improperly held that the escrow of the repair expenses and deductions from the purchase price were unauthorized. Open Permit contends that, because Curtiss had an affirmative duty to maintain the property under paragraph 17, and that because he failed to meet his burden of proving his asserted casualty-loss affirmative defense (Curtiss argued that he was not responsible for the loss of the fixtures), the repair expenses were properly escrowed and deducted from the purchase price.
 

 We agree that, under paragraph 17, the maintenance provision of the Contract, Curtiss had a duty to maintain the property “in the condition as it existed as of the Effective Date of the Contract.” However, if a loss to the property occurs, and if the loss is determined to be a casualty pursuant to paragraph 16, then the remedies provided by that paragraph are the only remedies available to the buyer. Should it be determined that the seller were in some way responsible for the loss, then it would not be a casualty and the provisions of paragraph 17 would apply requiring the seller to maintain the property. The question presented, then, is whether Curtiss was responsible, in any way, for the disappearance of the fixtures. If he were responsible, then the provisions of paragraph 17 would apply. If he was not, then the provisions of paragraph 16 would apply. The trial court found, after an evidentiary hearing, that Curtiss had not participated in removal of the fixtures.
 

 The grant or withhold of specific performance is within the sound discretion of the trial court and will not be disturbed on appeal unless clearly erroneous.
 
 Henderson Dev. Co. v.
 
 Gerrits, 340 So.2d 1205, 1206 (Fla. 3d DCA 1976). The trial court’s findings of fact are reviewed under the substantial competent evidence standard of review.
 
 See, e.g., Bellucci v. Moore,
 
 585 So.2d 490 (Fla. 5th DCA 1991);
 
 Bloch Equip. Co. v. Nat’l Med. Indus., Inc.,
 
 539 So.2d 1140 (Fla. 3d DCA 1988). Curtiss had the burden of proving that he was not responsible for the loss of the fixtures.
 
 See Hough, v. Menses,
 
 95 So.2d 410 (Fla.1957);
 
 Henderson,
 
 340 So.2d at 1206 (holding that burden of proof is on the vendor where a party seeks to establish an affirmative defense to specific performance). The trial court heard testimony and determined that substantial competent evidence was presented to prove that Curtiss was not involved in the removal of the fixtures. Therefore, it correctly found that the loss was a casualty and, as such, the provisions of paragraph 16 apply. Paragraph 16 does not contain a duty for Curtiss to repair the house. The express terms of paragraph 16 give Curtiss the option of restoring the improvements to the property.' It provides that “the seller
 
 may
 
 restore” the property to its original state.
 
 See Leghorn v. Wieland,
 
 289 So.2d 745, 747 (Fla. 2d DCA 1974) (stating that the word “may” in a contract denotes a permissive term and does not have the mandatory connotation of the word “shall”). If the seller fails to restore the property, the buyer then has the option of taking the property in an “as is” condition or cancel-ling the Contract with the return of the deposit. This is in accord with the principle announced in
 
 Johnson v. McKinnon,
 
 45 Fla. 388, 34 So. 272, 276 (1903), which states: “If anything happens to the estate between the time of sale and the time .of completion of the purchase, it is at the
 
 *826
 
 risk of the purchaser ... If [the seller] willfully damages [the property], he is liable to the purchaser.” In this case, there was no showing of willful damage to the property by Curtiss, and, by the express terms of this Contract, Curtiss was not obligated to restore the property to its original condition on the day the Contract was entered into. The risk of loss was on the buyer, Open Permit, to accept the property in the damaged condition or to cancel the Contract and take back its deposit.
 
 See O’Neal v. Commercial Assurance Co.,
 
 263 So.2d 246 (Fla. 3d DCA 1972);
 
 cf. Munshower v. Martin,
 
 641 So.2d 909 (Fla. 3d DCA 1994). As there was substantial competent evidence to support the trial court’s findings, the trial court did not abuse its discretion in denying specific performance and holding that the expenses for repairs were improperly charged to the seller, Curtiss, and that buyer Open Permit could take the property either “as is” or cancel the Contract and take back the deposit.
 
 [3]
 

 Open Permit next argues on appeal that the trial court erred in finding that the sums deducted from the seller at closing to satisfy back taxes and remove liens are not authorized by the Contract. We agree.
 

 Section 8B of the Contract specifies that the title to the property show marketable title as follows:
 

 B. CERTIFICATION, MARKETABILITY: Evidence of Title shall be certified or brought current through a date not more than 30 days prior to Closing. Evidence of Title shall show a marketable title of record in Seller, in accordance with current title standards adopted by the Florida Bar, subject only to those title exceptions permitted by this Contract or
 
 which shall be discharged by Seller at or before Closing.
 
 At Closing, Seller
 
 shall convey to Buyer a marketable title of record as described in this paragraph.
 

 (emphasis added)
 

 Section 8C establishes a duty on the part of the seller to take affirmative steps necessary to achieve and deliver a marketable title as follows:
 

 C. DELIVERY, EXAMINATION: Seller, at Seller’s expense, shall deliver Evidence of Title to Buyer at least 15 days prior to Closing and if Evidence of Title is not received by Buyer as required, Buyer may delay the Closing so that Buyer shall have up to 15 days from date of receipt of Evidence of Title to examine same. Buyer shall examine Evidence of Title within 15 days after receipt thereof, and Buyer shall, within the same 15 day period, notify Seller in writing of any title defects. If any title defects render the title unmarketable,
 
 Seller shall use diligent effort to cure such defects
 
 (including the bringing of necessary lawsuits) within 90 days from receipt of such notice. If Seller shall fail to cure such defects within the 90 day period, Buyer shall have the option of: (1) accepting title as it is; or (2) demanding a refund of the Deposit, in which case, the Deposit shall forthwith be returned to Buyer, and Buyer and Seller shall be relieved, as to each other, of all obligations under this Contract.
 
 *827
 
 Upon Closing, the Evidence of Title shall become the property of Buyer.
 

 (emphasis supplied)
 

 It is the seller’s obligation to deliver a marketable title at closing. In order to do so, all liens must be released by the seller as a contractual precondition to the duty set forth in Section 8B, the duty of the seller to convey to the buyer a marketable title.
 
 See Henley v. MacDonald,
 
 971 So.2d 998 (Fla. 4th DCA 2008) (holding that unpaid fines for code violations render property unmarketable);
 
 accord Chafetz v. Price,
 
 385 So.2d 104 (Fla. 3d DCA 1980). As there was no evidence adduced below of any attempt, let alone a “diligent effort,” to render the title marketable by satisfying back taxes and liens on the property, the seller is not relieved of his obligation to the buyer to deliver marketable title. Thus, the trial court erred in relieving the seller of his obligation to cure all outstanding costs, taxes and liens on the property and thereby deliver marketable title to the buyer at or before closing.
 
 See Taylor v. Day,
 
 102 Fla. 1006, 136 So. 701 (1931) (holding that an encumbrance which the buyer cannot satisfy and remove by applying part of a purchase money, will render the title unmarketable).
 

 Affirmed in part; reversed in part.
 
 [4]
 

 [2]
 

 . Property is defined in the Contract to include not only real property but also fixtures such as the refrigerator, stove, sink and cabinets.
 

 [3]
 

 . There was no showing below of an agreement to shift the risk of loss back to the seller. Absent such a contract provision, the purchaser bears the loss stemming from the damage to the property.
 
 Alvarez v. Garcia,
 
 662 So.2d 1312 (Fla. 3d DCA 1995);
 
 O’Neal,
 
 263 So.2d at 246.
 

 [4]
 

 . We affirm the order below compelling compliance with the Final Judgment, which required the seller to abide by all the terms and conditions as set forth in the Contract for Sale and Purchase of Property including the Financing Rider attached to the Contract.