DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**ABRAHAM BACHTIAR** and **LIAN LAI,**
Appellants/Cross-Appellees,

v.

**GISELLE LEONARDO,**
Appellee/Cross-Appellant.

No. 4D2024-2621

[June 3, 2026]

Appeal and cross-appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Mark Alan Speiser, Judge; L.T. Case No. 062022CA006874AXXXCE.

Kathryn Lee Ender of De Novo, Miami, Lilas Ayandeh of Ayandeh Law, P.A., Fort Lauderdale, and Janice Lopez of Dinsmore & Shohl LLP, Miami, for appellants/cross-appellees.

Daniel Adam Bushell of Bushell Law, PA, Fort Lauderdale, Robert E. Ferencik, Jr. of Hinckley Allen Snyder, LLP, Plantation, and Giselle Leonardo of Giselle Leonardo, P.A., Fort Lauderdale, for appellee/cross-appellant.

MAY, J.

We have before us a real estate contract that got lost in translation as the sellers appeal from a judgment for specific performance and damages. The sellers argue the trial court erred in entering a judgment for the buyer because the buyer was unable to close on the specified closing date and was therefore in breach of the contract. We agree and reverse.

- *The Facts*

On March 13, 2022, the parties executed an "as-is" Residential Contract for Sale and Purchase of a home. The contract set a closing date of April 28, 2022, defined closing as the point when all required funds were received and cleared, and all closing documents were delivered. The contract stated that time was of the essence.

The contract included a one-day inspection period and an addendum providing that the sellers would not provide a seller's disclosure and would not make repairs or concessions. The contract stated that any modification must be in writing and signed by both parties.

The contract was contingent on the buyer obtaining financing. On March 28, 2022, the buyer obtained a loan commitment. In mid-April, a review appraisal reduced the property value. On April 27, 2022, the day before the scheduled closing, a revised appraisal was transmitted to the buyer.

Because of the revised appraisal, the bank advised the buyer on April 28, 2022, that it could not approve her original loan request and instead issued a counteroffer for a reduced loan amount. The lender also requested additional documentation to complete underwriting and loan approval.

The buyer sent the documentation the next day, on April 29th. The closing disclosure was issued after April 28th. The buyer's loan officer testified that the buyer was not "clear to close" on April 28th and did not obtain the final loan approval until April 29th.

On April 28th, the parties communicated back and forth regarding a potential extension of the closing day. An addendum was drafted to extend the closing to May 10th, but the addendum was never executed. The parties dispute whether there was an enforceable oral agreement to extend the closing. Regardless, the closing did not occur on April 28th.

The buyer signed revised loan documents, wired funds, and sent executed closing documents to the closing agent. The closing agent circulated the settlement and closing documents and indicated they were date-sensitive for closing on May 4th. During this time, the sellers did nothing. On May 4, 2022, the sellers refused to close, asserting the contract had expired.

The buyer filed suit for specific performance, alleging the closing date had been extended beyond April 28th under the contract's automatic extension provision and/or a valid oral modification. The buyer argued that the sellers breached the contract when they refused to close on May 4th. The sellers denied the extension provision applied and maintained that the contract expired when the buyer failed to close on April 28th. The buyer also sought incidental damages.

2

o *The Trial*

Text message exhibits showed that on April 21, 2022, the sellers' listing agent informed the buyer's side that the sellers would "not extend the closing date." Despite this, the buyer texted the listing agent a few days later on April 27th at 9:00 p.m., stating, "the parties agree to change the Closing Date from April 28, 2022 to May 10, 2022," and the following morning requested a signed document from the sellers confirming that change.

The listing agent testified that he spoke with the sellers and their attorney, and they indicated, "[t]he buyer agreed with that, [the seller] didn't say no. He said see what happens." Later that morning, the listing agent texted the buyer proposed extension language that included additional terms, including that the buyer would purchase the property in its "as-is" condition with no further repairs or credits. The buyer responded by repeating her previous text that the parties agreed to extend the closing date to May 10th. The listing agent texted the buyer back, "I get him extend [sic] to May 10. I will forward you the extension."

At 11:55 a.m. the same morning, the listing agent emailed the buyer an addendum reflecting a May 10th closing date and a general "as-is" condition. The listing agent testified that the buyer signed the addendum, which the buyer confirmed.

The listing agent testified that after the buyer signed the addendum, he sent it to the sellers. The sellers wanted their listing agent to talk to the sellers' attorney to add additional "**current** as-is" condition language to the addendum. The buyer did not agree to this additional language.

At 12:58 p.m., the listing agent texted the sellers that "the buyer didn't want the sign [sic] the extension for purchase current as is conditions." Emails also showed that at 1:00 p.m., the listing agent told the sellers and the sellers' attorney that "the buyer not agree [sic] with the 'current as is condition' term." At 2:00 p.m., the sellers' attorney emailed the listing agent back, "please prepare a cancellation of contract as the Seller won't extend."

At 5:00 p.m. that day, the buyer emailed the sellers' attorney, "[t]his will confirm that the contract gives an automatic extension of seven (7) days for the closing." The exhibits do not reflect any response from the sellers, the sellers' attorney, or the listing agent. At 7:00 p.m. that night, the sellers texted the listing agent, "please follow [the sellers' attorney]'s advice. Thanks."

3

Because of this back-and-forth, the listing agent testified that the buyer did not agree to that term, and, as a result, no agreement was reached. He testified that his impression was that "both parties were still working on the deal." The buyer, by contrast, testified that she believed the parties had agreed to extend the closing date. This was based on communications with the listing agent and the buyer, including her understanding that the closing would be extended to May 10th.

On May 2nd, the closing agent emailed logistical instructions, to which the sellers' attorney responded with a smiley face. On May 3rd, the buyer emailed the listing agent that she was "ready to close." The following day, the listing agent texted the buyer that "the seller cancel [sic] the contract."

- *The Judgment*

The trial court found the sellers were in "breach of the contract by failing and refusing to close on May 4, 2022," and entered a judgment against the sellers "and in favor of [the buyer]'s breach of contract claim for specific performance." The trial court then awarded damages to be offset against the purchase price, including $381,509.35 for increased interest expense, $39,173.12 for rents and profits, and $239,268.00 for unpermitted improvements. With a contract that began at $825,000, after offsetting $659,950.47 in damages, the sellers were left to convey the property to the buyer for $165,049.53.

The sellers moved for a judgment in accordance with their motion for directed verdict and for a new trial. The sellers argued that the buyer breached by failing to obtain loan approval and close by April 28, 2022, no valid extension of the closing date occurred, and the contract terminated under its terms. They further argued that the buyer failed to establish entitlement to specific performance or damages, the trial court misinterpreted the unambiguous contract, and the damages award was unsupported by competent, substantial evidence and based on inadmissible expert testimony, warranting judgment in their favor or, alternatively, a new trial.

The buyer responded that the trial court properly entered judgment against the sellers, the sellers' motion improperly reasserted previously denied arguments, and that competent, substantial evidence supported the trial court's finding that the buyer was ready, willing, and able to perform and that the closing date was extended. The buyer further argued the damages award was supported by unrebutted evidence, including expert testimony, and that no basis existed for rehearing or a new trial.

4

The trial court set aside $80,000 attributed to the unpermitted-improvements damages and the interest award on the retained deposit but otherwise left the judgment intact.

From the judgment and the order on the sellers' post-trial motions, both parties appeal.

- ***The Analysis***

The sellers first argue the closing date was never extended and the trial court erred in finding a breach based on a post–April 28, 2022, closing date.  We agree with the sellers on this issue.  The sellers further argue there was no automatic extension of the closing date pursuant to Paragraph 5 of the agreement.

The buyer responds that the parties orally agreed to extend the closing date.  Alternatively, the buyer argued that Paragraph 5 provided an automatic extension of the closing date.

Whether a written contract was modified by subsequent agreement or course of dealing is a question of fact reviewed for competent, substantial evidence.  *Henley v. MacDonald*, 971 So. 2d 998, 999 (Fla. 4th DCA 2008); *Greenberg v. Bekins of S. Fla.*, 337 So. 3d 372, 375 (Fla. 4th DCA 2022).

  o *The Three-Part* <u>Okeechobee</u> *Analysis*

Even where a contract requires written modifications, an oral modification may be enforceable if the proponent establishes: (1) mutual assent to the modification; (2) subsequent conduct consistent with the modification; and (3) the proponent provided additional consideration beyond the original contract.  *Okeechobee Resorts, L.L.C. v. E Z Cash Pawn, Inc.*, 145 So. 3d 989, 995 (Fla. 4th DCA 2014) (citing *Prof'l Ins. Corp. v. Cahill*, 90 So. 2d 916, 918 (Fla. 1956)).  The record fails to reveal that the buyer established an enforceable oral modification of the contract.

    1. *Mutual Assent*

Mutual assent requires **clear and unequivocal** evidence of agreement; silence or failure to object does not establish assent.  *P.D.K., Inc. v. Madeline*, 291 So. 3d 134, 136 (Fla. 4th DCA 2020).  Courts distinguish between a binding modification and ongoing negotiations; communications reflecting proposals or incomplete terms do not establish assent.  *Perera v. Diolife LLC*, 274 So. 3d 1119, 1123 (Fla. 4th DCA 2019) (holding emails and draft amendment that reflected a "non-binding offer"

5

that "only becomes effective upon execution" did not establish modification where parties did not act on it).

Conduct must reflect performance under the alleged modification—not merely actions consistent with the original contract. *Okeechobee Resorts, L.L.C.*, 145 So. 3d at 995. This includes the proponent providing independent consideration for the modification. *See Ward Photonics LLC v. Setzer*, No. 6:18-cv-961-Orl-37GJK, 2018 WL 11466156, at *7 (M.D. Fla. Dec. 11, 2018) (applying *Okeechobee* and *Cahill* to find no valid modification where parties orally agreed to extend the thirty-day return window, acted upon this agreement, but the proponent failed to provide additional consideration).

Here the contemporaneous communications do not establish a clear and unequivocal meeting of the minds. The listing agent told the buyer on April 21st that the sellers would not extend the closing date. The buyer's subsequent texts unilaterally declaring that "the parties agree to change the Closing Date" were not evidence of a concluded agreement; they were the buyer's own assertion that an agreement existed.

On April 28th, the listing agent transmitted an addendum extending the closing date to May 10th with a general "as-is" condition, which the buyer signed, and the listing agent then forwarded to the sellers for signature. The sellers, however, required additional language specifying that the property be purchased in its "current as-is" condition. This was a more specific term going beyond the general as-is provision that the buyer had already accepted. The buyer refused to agree to this additional term. As a result, the sellers' attorney instructed the listing agent to prepare a cancellation. The sellers' subsequent silence in response to the buyer's 5:00 p.m. email asserting a contractual extension right cannot substitute for an express agreement.

The trial testimony confirms the absence of mutual assent. The listing agent testified the sellers "didn't say no" and responded "see what happens"—equivocal language that falls well short of the unequivocal assent *Okeechobee* requires. The listing agent confirmed on cross-examination that there was no extension to May 10th.

The sellers' real estate attorney further testified he "did not agree" to any extension, that post-April 28th discussions were attempts to "revive" an already-expired contract. When the buyer asserted an extension right, he "just listened" because he lacked authority to respond. Taken together, the record establishes that the parties discussed extending the closing

6

date but did not reach an agreement. Thus, the buyer failed to establish the first *Okeechobee* element.

### 2. Subsequent Conduct Consistent With The Modification

The buyer's post-April 28th conduct—signing revised loan documents, wiring funds, and sending closing documents—is consistent with her subjective belief that the deadline had been extended. But the sellers' conduct does not.

The listing agent testified that the addendum remained unexecuted and "waiting for both parties" to sign. The sellers' attorney described post-April 28th communications as efforts to revive an expired contract, not performance under a modified one. The sellers' attorney's cancellation instruction and the sellers' direction to follow that advice confirm the sellers were not performing under any new agreement. Thus, the second *Okeechobee* element is not met.

### 3. Additional Consideration

The only plausible consideration for an extension was the "current as-is" language that the sellers wanted to add to the extension addendum. The record shows this term was never agreed upon. The listing agent sent the buyer an addendum containing an "as-is" condition term, and the buyer signed it. The sellers, however, demanded the agreement read "current as-is" before they would agree to the extension. The buyer refused to accept the additional term. In short, the parties never reached an agreement on consideration for the extension. Thus, the third *Okeechobee* element is not met.

In sum, the record does not establish a clear and unequivocal meeting of the minds. The parties' conduct reflected continued bargaining rather than performance under a new agreement, and the buyer did not provide additional consideration. Thus, the trial court's finding of an enforceable extension is not supported by competent, substantial evidence under *Okeechobee's* three-part analysis.

### o *The Buyer's Automatic Extension Argument*

The buyer also argued that Paragraph 5(a) of the original agreement provided for an automatic extension of the closing date. The sellers responded that Paragraph 5(a) did not operate to extend the closing date because the buyer failed to obtain loan approval and complete underwriting by April 8, 2022. The buyer replied that she had effectively

secured financing and any remaining lender conditions fell within the scope of the automatic extension.

Whether a contractual extension provision applies presents a mixed question of law and fact. The interpretation of the contract is reviewed de novo. *Greenberg*, 337 So. 3d at 375. Whether those conditions were satisfied is a factual determination reviewed for competent, substantial evidence. *Id.*

A lender is generally required to ensure that the borrower receives the Closing Disclosure no later than three business days before consummation of the loan. 12 C.F.R. § 1026.19(f)(1)(ii). Paragraph 5(a) provided for an automatic extension of the closing date, not to exceed seven days, where Paragraph 8(b) is checked, the buyer has obtained loan approval, underwriting is complete, and closing funds are not available on the closing date solely because of the CFPB three-business-day Closing Disclosure delivery requirement. *See* 12 C.F.R. § 1026.19(f)(1)(ii).

Paragraph 8(b), if checked, makes the contract contingent on the Buyer obtaining approval for a conventional mortgage loan to finance her purchase of the property. Neither party disputes that Paragraph 8(b) was checked. The parties dispute whether (1) loan approval had been obtained and (2) underwriting had been completed by April 28th. We agree with the sellers that neither condition was met.

The record shows the bank had not approved a finalized, fundable loan by April 28th. The buyer received two letters from the bank that day. The first was a "Counteroffer/Notice of Action Taken," stating the bank was unable to offer credit on the originally requested terms and could only conditionally offer credit on different terms. This occurred because the buyer had requested a new appraisal that came in lower, requiring the loan to be restructured to a reduced amount.

The buyer's loan officer testified that the bank's original approval expired, and a new commitment letter was required. Only after the buyer accepted the counteroffer did the bank issue a revised commitment on the new loan. But that letter still required additional documentation before the file could be completed.

The buyer did not submit that documentation until April 29th. At best, the buyer had a revised commitment for a newly structured loan **conditioned** on outstanding borrower documentation. That does not constitute final loan approval.

8

The loan officer testified that underwriting on the revised loan was completed only after the bank received the missing documentation after April 28th. The closing agent's testimony is consistent with this understanding: the lender's and title company's Closing Disclosure figures did not match until May 2, 2022, and matching figures were necessary to complete underwriting.

Put simply, on the closing date, the bank had changed the loan terms, the buyer had only just accepted the revised loan terms, additional documentation was outstanding, and underwriting remained incomplete. Because the loan file was not otherwise complete, the absence of closing funds on April 28th cannot be attributed solely to the CFPB timing requirement. Accordingly, Paragraph 5(a) was not triggered, and the automatic extension did not apply.

Because the buyer failed to establish modification under *Okeechobee* or satisfaction of Paragraph 5's express conditions, the trial court erred in finding the closing date was extended beyond April 28th. Accordingly, April 28th remained the operative closing date, and the buyer, not the sellers, breached the contract by failing to close on that date.

Specific performance is unsupportable because a buyer who was in default on the operative closing date is not entitled to specific performance. *See Nacoochee Corp. v. Pickett*, 948 So. 2d 26, 29-30 (Fla. 1st DCA 2006).

Our decision on this issue moots the remaining issues raised in the appeal and the cross-appeal. We therefore reverse and remand the case to the trial court to vacate the judgment in favor of the buyer and for entry of judgment for the sellers.

*Reversed and remanded.*

GROSS and KLINGENSMITH, JJ., concur.

\* \* \*

**Not final until disposition of timely-filed motion for rehearing.**

9