893 So.2d 603 (2005)
Joseph SCHROEDER a/k/a Joseph J. Schroeder, Appellant,
v.
Mark R. MANCERI, as personal representative of the Estate of Roland L. Chamberland, deceased, Appellee.
Nos. 4D03-198, 4D03-2627.
District Court of Appeal of Florida, Fourth District.
January 26, 2005.
Rehearing Denied March 3, 2005.
Thomas G. Alberts of the Law Offices of Thomas Gregory Alberts, Coral Gables, for appellant.
*604 Douglas F. Hoffman of Rudolf & Hoffman, P.A., Fort Lauderdale, for appellee.
PER CURIAM.
The Appellant, Joseph Schroeder, appeals a final judgment entered against him in a suit he brought against Mark R. Manceri, the personal representative of Roland Chamberland's estate. In this suit, Schroeder alleged that he overpaid two notes owed to the estate. We reverse and remand, finding that the trial court erred in approving the default dates set by Manceri. We affirm in all other respects, including the trial court's approval of the five percent late fee on the entire balance of the notes.
Schroeder purchased a piece of property on Duval Street in Key West from Peter Ryder. Roland Chamberland was a lienholder on this property. When Schroeder purchased the property, he assumed the $100,000 debt on the property owed to Chamberland. To secure the $100,000 debt, Schroeder mortgaged property he owned and signed a promissory note on October 3, 1997. Under the language in the 1997 note, the note was to be repaid to Chamberland within one year. An addendum to the note created an option to extend the note for another year. This option was exercised by Schroeder in an October 1, 1998 letter. Schroeder later borrowed an additional $100,000 from Chamberland and secured this loan with another note and another mortgage executed on February 3, 1999.
Chamberland passed away on October 23, 1999. Schroeder continued to make his scheduled payments on both loans to Peter Ryder, a personal representative of Chamberland's estate. Alan Eckstein, another personal representative of Chamberland's estate, testified that he and Ryder agreed to allow Schroeder to extend the 1997 note for an indefinite period of time.
On August 23, 2000, Ryder and Eckstein were removed from their positions as co-personal representatives of Chamberland's estate and replaced by Mark Manceri.[1] Manceri sent a letter to Schroeder dated October 11, 2000 which stated that both of the notes "appear to be in default, as the required balloon payments were not paid timely." The letter stated it was a "formal demand, on behalf of the Estate" and full payment was due no later than November 13, 2000. An October 24, 2000 letter from Manceri to Schroeder states that pursuant to a telephone conversation, Schroeder would need to send documentation to him "substantiating ... [his] efforts to obtain financing" before November 6, 2000 to avoid foreclosure proceedings. Joseph Clark of Key West Bank wrote Manceri on November 6, 2000 stating that Schroeder applied for a refinance loan and asking that Manceri provide Clark with the current mortgage and payment history and the total amount due. On December 26, 2000, Manceri again wrote Schroeder, stating that he believed Schroeder had been given sufficient time to close the loan. Therefore, Manceri advised Schroeder that the loans were due in full on January 17, 2001 and foreclosure proceedings would be initiated at that time if the notes were not paid. On December 27, 2000, Schroeder sent Manceri a fax stating there had not been sufficient time to process the loan and asking that Manceri "allow extra time for the Holidays." Schroeder also stated that Clark would be sending a progress letter to Manceri. On January 25, 2001, Manceri again wrote Schroeder stating that he did not receive a written report of the status of the loan application and asking *605 for this report no later than February 5, 2001. On February 5, 2001, Manceri wrote another letter confirming that he spoke with Schroeder's office and learned that Schroeder was out of the country. This letter also stated that no further extensions would be granted. In addition, Manceri stated that the requested report on the status of the loan needed to be delivered to him no later than February 9, 2001, and the refinancing of the loans needed to be completed by the end of February.
The refinancing was not completed by the end of February as on May 9, 2001, Manceri's counsel sent a letter with payoff figures on the two notes to Schroeder's counsel. The payoff figures were based on the calculations of Robert Liszewski, a certified public accountant, and the calculations were based on information provided to Liszewski by Manceri. The default date for the 1997 note was set as October 1, 1999. The default date for the 1999 note was set as February 1, 2000. Liszewski imposed a five percent late fee on both balloon payments. Eventually, Schroeder paid off both loans under protest.
Schroeder filed suit against Manceri as the personal representative of Chamberland's estate, seeking a refund of the amounts he paid in default penalties and interest. After a non-jury trial, the trial court issued its final judgment in favor of Manceri, finding that Manceri properly demanded repayment of the notes and mortgages as they were in default, that the payoff figures were correctly calculated, and that no valid extension of either note or mortgage existed because no written document regarding the extension was produced as required by Florida law. Schroeder now appeals the trial court's final judgment.
We find the trial court erred in approving an October 1, 1999 default date for the 1997 note and a February 1, 2000 default date for the 1999 note. As to the 1997 note, Schroeder correctly argues that it was error for the trial court not to consider the evidence presented that he and Eckstein agreed to an oral extension of the 1997 note because the extension was not in writing. The two cases cited for the proposition that a writing was required do not hold that an extension such as this be made in writing. The first case cited was Roxton v. Armstrong, 115 Fla. 506, 155 So. 755 (1934). In Roxton, the court affirmed the trial court's award of a foreclosure decree finding an oral extension invalid where the award was based on "the rule that where parties intend that their oral agreements shall be reduced to writing, as the evidence of their terms of agreement, there is nothing binding on them until the writing is executed." Id. at 755. In this case, there is no indication that Eckstein and Schroeder intended to reduce their agreement to writing or that the 1997 note or mortgage required an extension to be in writing. Thus, Roxton is not applicable to this situation.
The next case cited was Zlinkoff v. Von Aldenbruck, 765 So.2d 840 (Fla. 4th DCA 2000). In Zlinkoff, this court found a foreclosure action was barred as untimely. Id. at 843. The recorded mortgage stated a final maturity date of February 1992. Id. at 842. Under section 95.281, Florida Statues, which concerns limitations on foreclosure actions, the right to pursue an action for foreclosure terminated in February 1997, five years after the maturity date on the recorded mortgage. Id. There was evidence that there was an oral agreement and an unrecorded written agreement to extend the final maturity date. Id. However, this court found that section 95.281 requires an extension of the final maturity date to be recorded in order to extend the time to file a foreclosure action. Id. As *606 the extensions were not recorded, there was no valid extension for the purposes of pursuing a foreclosure action against Zlinkoff who acquired the property in October 1998. Id. at 842-43. In the instant case, because there is no issue raised involving the application of section 95.281 or whether a party has a right to pursue a foreclosure action, Zlinkoff does not apply.
An oral extension of a contract like an oral contract is valid. See St. Joe Corp. v. McIver, 875 So.2d 375, 381 (Fla.2004) (stating that "[o]ral brokerage contracts, like other oral contracts, are valid and enforceable.") Florida does have statutes which require a writing in certain situations. Under section 95.04, Florida Statutes, a promise to pay a debt barred by the statute of limitations must be in writing. Similarly, Florida's Statute of Frauds bars oral contracts in certain other situations. See § 725.01, Fla. Stat. (2003). However, the extension in this case was not required to have been in writing under either section 95.04 or section 725.01. Schroeder argues that a valid oral extension of the 1997 note existed as Alan Eckstein, one of the personal representatives who later replaced Manceri, told Schroeder that the 1997 note was extended for an indefinite amount of time. This oral extension granted to Schroeder would have affected the October 1, 1999 default date set for the 1997 note. Therefore, because an extension was not required to be in writing, the trial court erred in not considering the evidence presented relating to an oral extension of the 1997 note.
The trial court also erred in setting the default date of February 1, 2000 for the 1999 note. The 1999 note states that the note is to be paid in twelve payments and the final balloon payment is due on February 1, 2000. The note also states:
[t]he holder of this note at his sole discretion, may renew this note from year to year under the same terms and conditions. If the holder of this note does not desire to renew this note at the end of any given year, the holder shall provide the maker with written notice indicating that the note will not be renewed. Such notice shall be provided to the maker at least sixty (60) days prior to the date of yearly maturity.
(Emphasis added). Thus, if the note was not going to be renewed Schroeder had to be given notice. Otherwise, the note automatically renewed itself for another year. There is no evidence that Schroeder was given notice that the note was not being renewed before the February 1, 2000 due date. Thus, it was error for the default date for the 1999 note to have been set as February 1, 2000. Because the trial court erred in setting the default dates for the two notes, this case warrants reversal.
We affirm on all other issues but specifically note that it was not improper for the trial court to impose a five percent late fee on the entire balance due on each loan. Schroeder argues that the late fees apply only to late monthly payments, which do not include late balloon payments, the payments on which the late fees were imposed in this case. The 1997 note requires:
Eleven (11) payments of interest only beginning one month from the date hereof in the amount of $833.33 per month, plus one final payment due one year from this date of all outstanding principal and interest.
As to the five percent late fee, the relevant provision in the 1997 note states:
If the note holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the note holder. The amount of the *607 charge will be 5% of my overdue payment of principal and interest.
The provision concerning the late fee requires it to be imposed on "monthly payments." Nothing in the 1997 note has been explicitly labeled as a "monthly payment." However, the eleven interest payments are due once a month until the twelfth month when the final balloon payment is then paid. Thus, all of the payments are monthly payments as one is due each month and therefore, the five percent late fee would apply to all of them.
The five percent late fee provision in the 1999 note states:
If the note holder has not received the full amount of any payment by the end of 5 calendar days after the date it is due, the maker of this note will pay a late charge to the note holder. The amount of the charge will be 5% of the overdue payment of principal and interest.
Because, the 1999 note states that it applies to "any payment" the five percent late fee clearly applies to the final balloon payment. Furthermore, both notes explicitly stated that the charge is five percent of an "overdue payment of principal and interest" indicating that the late fee would be imposed when either payments of interest or principal or both are overdue. (emphasis added). However, the calculation of the late fees imposed on both notes will necessarily have to be reconsidered as the default dates are to be reconsidered.
Accordingly, we reverse to allow the trial court to consider the effect of the oral extension on the 1997 note and to resolve any factual disputes surrounding the existence of the extension. We also reverse for the trial court to reconsider the default date for the 1999 note as Schroeder was never given notice the note was not being renewed pursuant to the plain language of the note. We affirm in all other respects and remand for proceedings consistent with this opinion.
AFFIRMED in part and REVERSED in part.
GUNTHER and TAYLOR, JJ., concur.
STONE, J., concurs in part and dissents in part with opinion.
STONE, J., concurring in part and dissenting in part.
I dissent, in part, as to the application of the 5% penalty charged to the entire principal balance. I would recognize this charge only to the extent that it is applied to late periodic payments. In all other respects, I concur in the opinion.
NOTES
[1] Manceri testified that the reasons for the removal of Ryder and Eckstein did not specifically involve the notes and mortgages at issue in this case.