951 So.2d 61 (2007)
WSOS-FM, INC., Appellant,
v.
Doyle HADDEN, d/b/a Hadden & Associates, Appellee.
Nos. 5D06-1687, 5D06-3651.
District Court of Appeal of Florida, Fifth District.
March 9, 2007.
*62 Dock A. Blanchard, of Blanchard, Merriam, Adel & Kirkland. P.A., Ocala, for Appellant.
Damon A. Chase, of Chase Freeman, P.A., Lake Mary, and Alex Finch, Longwood, for Appellee.
ORFINGER, J.
WSOS-FM, Inc. ("WSOS") appeals a final judgment in favor of Doyle Hadden. Following a non-jury trial, the trial court concluded that WSOS breached an exclusive listing agreement between the parties by failing to pay Mr. Hadden a commission on the sale of a radio station. WSOS argues that the trial court erred in finding that the agreement between the parties, providing that the agreement could only be terminated in writing, could not be orally modified to provide for verbal termination. We agree and reverse.
In April 1998, the parties entered into an exclusive listing agreement ("the agreement"). Under the terms of the agreement, WSOS, which operated a radio station in St. Augustine, granted Mr. Hadden exclusive rights to market the station for sale. Mr. Hadden would be paid a 5% commission if: (1) WSOS was sold during the term of the agreement; or, (2) Mr. Hadden presented WSOS with an offer meeting the asking price and terms and WSOS declined that offer; or, (3) an agreement to sell WSOS was entered into within 24 months of the termination of the agreement to a buyer that Mr. Hadden had solicited during the terms of the agreement. Most relevant to this dispute, the agreement further provided that:
After this Agreement has been in effect for One Hundred Eighty (180) days, it may be terminated by either party on Thirty (30) days prior written notice to the other party. Unless so terminated, it will remain in effect indefinitely.
In September 2002, Mr. Hadden sent Mike Smith, the general manager of WSOS, a fax stating that he had a potential buyer who was willing to buy WSOS-FM and its AM station for $3.5 million. That same day, Mr. Smith responded with a letter to Mr. Hadden, claiming that in a telephone conversation between them two years earlier, the exclusive listing agreement had been cancelled. Mr. Hadden *63 promptly responded with a letter to Mr. Smith denying that the listing agreement had been terminated, but agreeing to accept Mr. Smith's September 2002 letter as WSOS's 30-day notice that WSOS wished to cancel the agreement. About nine months later, WSOS was sold for $4 million.
Mr. Hadden filed a breach of contract complaint against WSOS, alleging that WSOS breached its agreement to pay him the 5% commission. In its answer, WSOS denied any breach of contract, and while not artfully pled, asserted that the agreement had been orally modified by the parties to allow for verbal termination and then terminated by mutual agreement, despite the contractual provision requiring written notice.
At trial, while the parties agreed that the contract required written termination, the evidence was in substantial conflict on the issue of WSOS's claim of oral modification and termination. Ultimately, the trial court found in favor of Mr. Hadden, awarding him a $165,000[1] commission, plus interest, from the date of WSOS's sale. In its final judgment, the trial court concluded:
The language of the Agreement is clear and unambiguous. A contract will be construed according to its own clear and unambiguous terms. Arnold v. First Savings & Trust Co., 104 Fla. 545, 141 So. 608 (1932). It is clear to the Court that the plain meaning of the Exclusive Listing Agreement provided that the agreement can be terminated by any party upon written notice, and because there was no written notice terminating the Exclusive Listing Agreement, the Plaintiff is entitled to commission. Compare Law Realty, Inc. v. Pagliarulo, 385 So.2d 1093 (Fla. 4th DCA 1980).
(Emphasis added). WSOS now appeals the final judgment, as well as the trial court's order awarding Mr. Hadden attorney's fees and costs.
WSOS claims that the trial court erred in concluding that the agreement could not be orally modified to allow for verbal termination. "The interpretation of a contract is a question of law and, therefore, we are not bound by the conclusions reached by the trial court regarding construction of the Contract. Thus decisions which construe a contract are generally subject to review on appeal by the de novo standard of review." NCP Lake Power, Inc. v. Fla. Power Corp., 781 So.2d 531, 536 (Fla. 5th DCA 2001) (internal citation omitted).
WSOS cites to Professional Insurance Corp. v. Cahill, 90 So.2d 916 (Fla. 1956), and Arvilla Motel, Inc. v. Shriver, 889 So.2d 887 (Fla. 2d DCA 2004), for the proposition that oral modification of an agreement is allowed, even if the agreement explicitly states that it may only be modified or terminated in writing. See also Pan Am. Eng'g Co. v. Poncho's Constr. Co., 387 So.2d 1052, 1053 (Fla. 5th DCA 1980) (holding that "[t]here is solid support for the principle that written contracts can be modified by subsequent oral agreement of the parties, even though the written contract purports to prohibit such modification"). Such modification, however, is only allowed when it has been accepted and acted upon in such a manner that refusing to enforce it would constitute *64 fraud upon either party. See Cahill, 90 So.2d at 918.[2]
It is unclear to us if the trial judge concluded that the agreement could not be orally modified and then verbally terminated, or if, while recognizing that oral modification and termination was legally possible, was simply not persuaded by the evidence that such had occurred. The former conclusion would be erroneous as it is possible to terminate an agreement orally, even though the agreement requires written termination, provided that the parties agreed to waive the requirement of written termination and WSOS relied to its detriment on that modification. See Cahill; Arvilla Motel; Pan Am. On the other hand, the latter conclusion would not be erroneous because there was an issue of fact concerning whether the agreement had been orally terminated, and, based on the evidence, the trial court could have determined that no oral modification or termination occurred. See Evans v. State, 800 So.2d 182, 188 (Fla.2001) (holding that "it is the function of the trial court to resolve such factual disputes, and the trial court's determination should be upheld absent an abuse of discretion").
Because we cannot tell if the trial judge concluded that an oral modification and termination occurred but was ineffective due to the requirement that it be in writing, or if no oral modification and termination occurred, we remand for further proceedings. We also reverse the award of attorney's fees and costs, though if Mr. Hadden ultimately prevails on remand, he shall be entitled to recover his fees and costs, including appellate attorney's fees.
REVERSED AND REMANDED.
GRIFFIN and LAWSON, JJ., concur.
NOTES
[1] The parties stipulated that in accordance with the trial court's grant of partial summary judgment, the amount of the sale subject to commission is $3.3 million ($4 million minus $300,000 for the sale of the AM station and $400,000 for the real property). Therefore, Mr. Hadden was entitled to 5% of $3.3 million, or $165,000.
[2] Cahill states that:

A written contract or agreement may be altered or modified by an oral agreement if the latter has been accepted and acted upon by the parties in such a manner as would work a fraud on either party to refuse to enforce it. . . . And oral modification under these circumstances is permissible even though there was in the written contract a provision prohibiting its alteration except in writing.
90 So.2d at 918.