DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT
*July Term 2014*

**OKEECHOBEE RESORTS, L.L.C.,**
Appellant,

v.

**E Z CASH PAWN, INC.,**
Appellee.

No. 4D13-2674

[ September 3, 2014 ]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Joseph Marx, Judge; L.T. Case No. 502012CA002728XXXXMB.

Tara A. Finnigan of Tara A. Finnigan P.A., West Palm Beach, for appellant.

Ronald M. Gaché and Scott A. Simon of Shapiro, Fishman & Gaché, LLP, Boca Raton, for appellee.

HANZMAN, MICHAEL, Associate Judge.

### *Introduction*

This case – like many preceding it – involves claims seeking to enforce an alleged oral modification of a written contract which expressly prohibits any parol alteration of its terms and conditions. The transaction at issue (a pawn contract) also is subject to the "Florida Pawnbroking Act," which in pertinent part requires that extensions of a default date (the type of modification appellant sought to enforce here) be "evidenced by a written memorandum." § 539.001(11)(b), Fla. Stat. (2011). Given this legislative edict and the bargain struck by the parties, the trial court granted appellee's motion for summary judgment and thereafter entered Final Judgment in its favor. Appellant claims error, asserting: (a) that neither the contract nor the statute in fact requires that all modifications be in writing; and (b) that its "detrimental reliance" upon appellee's oral promises to extend the default date enables it to side-step any contractual

or statutory impediment to  enforcement of the alleged modification.  We affirm.

***Facts***

Appellee (the defendant below) E Z Cash Pawn, Inc. is a pawnbroker licensed under the Florida Pawnbroking Act codified in Chapter 539.  On April 15, 2011, appellant (the plaintiff below) Okeechobee Resorts, LLC secured a loan from E Z Cash and pledged a Chevrolet truck as collateral.  The parties' written agreement contained a maturity date of May 15, 2011, and a default date of June 14, 2011.  In the event of default, E Z Cash was permitted to sell the truck.

The contract contained three other clauses relevant to our disposition.  It first provided that any pawn "may be extended upon mutual agreement of the parties."  Though this particular clause did not require that any such extension be in writing, the contract went on to recite that:  (a) "[n]o oral representation shall in any way change or modify these written conditions and such oral representation shall in no way be binding upon the issuer of this pawn ticket"; and (b) "verbal agreements for additional days are non binding."  The parties agree that the contract's terms and conditions were never modified in writing.

Okeechobee failed to repay the loan prior to the written default date, and E Z Cash proceeded to sell the truck as authorized by the contract.  Seven months later, Okeechobee brought suit based upon the allegation that E Z Cash had orally agreed to extend the default date; a promise Okeechobee allegedly relied upon to its detriment.  Specifically, Okeechobee alleged that:  (a) prior to the June 14 default date, the parties orally agreed to extend the pawn until June 24; (b) on June 23, the parties again orally agreed to extend the pawn until June 29; and (c) on June 28, the parties orally agreed to a final extension through July 5, 2011.  Okeechobee claimed that in reliance on these oral extensions it sold other property in order to raise the funds needed to repay the loan.  Okeechobee further alleged that it deposited sufficient funds into its attorney's trust account before expiration of the claimed July 5 deadline, and that when its lawyer attempted to pay off the loan, she was told the truck already had been sold.[1]

---

[1] We question how the sale of this other property – while possibly done in "reliance" upon E Z Cash's alleged promise to extend the default date – was "detrimental," unless perhaps Okeechobee was forced to sell at a price below fair market value.  Nevertheless, for purposes of our analysis, we assume that Okeechobee would be able to demonstrate "detrimental reliance" upon the alleged

## *Governing Law*

The question of when a party may attempt to enforce an alleged oral modification of a written contract has no doubt been a much litigated subject. And while courts faced with such claims have arguably delivered a somewhat mixed message, a careful examination of precedent reveals that the issue is not particularly complex.

When a written contract is silent on the question of modification, or expressly permits modification – yet fails to specify that a writing is required – an oral modification is enforceable so long as it is not precluded by statute. *See Schroeder v. Manceri*, 893 So. 2d 603, 606 (Fla. 4th DCA 2005) (oral extension of default date was enforceable as it was not required to be in writing by statute or terms of contract); *The Race, Inc. v. Lake & River Recreational Props., Inc.*, 573 So. 2d 409, 410-11 (Fla. 1st DCA 1991). In these two scenarios, no legislatively imposed public policy mandates that the modification be in writing, and the parties themselves have not bargained for such a requirement. As a result, the contract may be modified through a "subsequent agreement" *or* the parties' "subsequent conduct," provided that the amendment is "supported by proper consideration." *St. Joe Corp. v. McIver*, 875 So. 2d 375, 381, 382 (Fla. 2004).

The issue becomes *slightly* more complicated when a statute or the contract itself requires that any agreement (or modification) be in writing. In the former instance, the Legislature has decided, as a matter of public policy, to "intercept the frequency and success of actions based on nothing more than loose verbal statements or mere innuendos[,]" and thereby foreclose potentially fraudulent claims. *Yates v. Ball*, 181 So. 341, 344 (Fla. 1937). In the latter instance, the parties themselves have contractually agreed to do exactly the same thing. They have bargained for predictability and certainty and have foreclosed (or at least attempted

---

oral representations, as well as the other elements of a claim based upon the doctrine of promissory estoppel – defined as:

> [t]he principle that a promise made without consideration may nonetheless be enforced to prevent injustice if the promisor should have reasonably expected the promisee to rely on the promise and if the promisee did actually rely on the promise to his or her detriment.

> *DK Arena, Inc. v. EB Acquisitions I, LLC,* 112 So. 3d 85, 93 (Fla. 2013) (quoting BLACK'S LAW DICTIONARY 631 (9th ed. 2009)).

to foreclose) any chance of being subjected to litigation premised upon alleged oral modifications of their written document.

Contracts are voluntary undertakings, and contracting parties are free to bargain for – and specify – the terms and conditions of their agreement. That freedom is indeed a constitutionally protected right. *Nw. Nat'l Life Ins. Co. v. Riggs*, 203 U.S. 243, 252-53 (1906); *Hoffman v. Boyd*, 698 So. 2d 346, 348 (Fla. 4th DCA 1997). Contracting parties are at liberty to address any issue they see fit, including the question of whether their agreement may be modified at all, and, if so, how. *See, e.g., Atl. Beach Mgmt., Inc. v. Breakers of Fort Walton Beach Condos., Inc.*, 589 So. 2d 315, 316 (Fla. 1st DCA 1991). When contracting parties elect to adopt a term or condition, including one addressing the question of modification, it is not the province of a court to second guess the wisdom of their bargain, or to relieve either party from the burden of that bargain by rewriting the document. *See Pol v. Pol*, 705 So. 2d 51, 53 (Fla. 3d DCA 1997) ("[A] court cannot rewrite the clear and unambiguous terms of a voluntary contract."); *Int'l Expositions, Inc. v. City of Miami Beach*, 274 So. 2d 29, 30-31 (Fla. 3d DCA 1973) ("[C]ourts may not rewrite, alter, or add to the terms of a written agreement between the parties and may not substitute their judgment for that of the parties in order to relieve one from an alleged hardship of an improvident bargain."). Rather, it is a court's duty to enforce the contract as plainly written. *See Rybovich Boat Works, Inc. v. Atkins*, 587 So. 2d 519, 521-22 (Fla. 4th DCA 1991) (reversing trial court's refusal to give effect to an unambiguous "anti-waiver" clause contained in the parties' written contract).

So when a contract plainly provides that any modification must be in writing, all claims – however labeled – founded upon an alleged oral modification should generally be disposed of as a matter of law. The parties have dealt with the issue through a provision designed – and intended – to protect them against the risk of "being enmeshed in, and harassed by" protracted litigation based upon alleged oral modifications, *Cohen v. Pullman Co.*, 243 F.2d 725, 729 (5th Cir. 1957); *LynkUs Commc's., Inc. v. WebMD Corp.*, 965 So. 2d 1161 (Fla. 2d DCA 2007), and courts should in most cases do no more than enforce the contract as written.

The law of course is rarely so clear, and in *Professional Insurance Corp. v. Cahill*, 90 So. 2d 916, 918 (Fla. 1956), our Supreme Court held that even when an agreement expressly precludes oral modifications:

> [a] written contract or agreement may be altered or modified
> by an oral agreement if the latter has been accepted and acted

4

upon by the parties in such manner as would work a fraud on either party to refuse to enforce it.

The *Cahill* court did not elaborate on precisely what is required in order to prove that an alleged oral agreement had "been accepted and acted upon by the parties," or under what circumstances a failure to enforce such a modification would "work a fraud." *Id.* But *Cahill* involved a situation where the plaintiff alleged that an oral modification to his employment agreement required that he perform services not within the scope of the initial contract, that he in fact performed those services, and that the defendant accepted and benefited from that additional work (i.e., consideration *not* required by the initial contract). *Id.* at 917.

In the almost sixty years since *Cahill* was decided, our courts have repeatedly confronted claims grounded upon alleged oral modifications of contracts containing a so-called "no oral modification clause." The vast majority of resulting appellate decisions have disposed of these cases by accurately reciting – and then proceeding to apply – the standard adopted in *Cahill. See, e.g., J. Lynn Constr., Inc. v. Fairways at Boca Golf & Tennis Condo. Ass'n,* 962 So. 2d 928 (Fla. 4th DCA 2007); *WSOS-FM, Inc. v. Hadden,* 951 So. 2d 61 (Fla. 5th DCA 2007); *Blue Paper, Inc. v. Provost,* 914 So. 2d 1048 (Fla. 4th DCA 2005); *Arvilla Motel, Inc. v. Shriver,* 889 So. 2d 887 (Fla. 2d DCA 2004); *W.W. Contracting, Inc. v. Harrison,* 779 So. 2d 528 (Fla. 2d DCA 2000); *Jupiter Square S.C. Assocs., Inc. v. Tomary, Inc.,* 571 So. 2d 538 (Fla. 4th DCA 1990); *King Partitions & Drywall, Inc. v. Donner Enters., Inc.,* 464 So. 2d 715 (Fla. 4th DCA 1985); *Commerce Nat'l Bank v. Van Denburgh,* 252 So. 2d 267 (Fla. 4th DCA 1971); *Long Key Corp. v. Willis-Burch, Inc.,* 133 So. 2d 655 (Fla. 3d DCA 1961); *Larnel Builders, Inc. v. Nicholas,* 123 So. 2d 284 (Fla. 3d DCA 1960).

Other decisions, however, have muddied the waters a bit. Some have casually remarked that an oral modification of a written contract containing a "no oral modification" clause is enforceable *anytime* a party alleges "conduct which would render it a fraud upon one party for the other to refuse to perform the alleged oral modification," *Wilson v. Woodward,* 602 So. 2d 547, 549-50 (Fla. 2d DCA 1992), a metric markedly different from the requirements imposed by *Cahill.* And in *Canada v. Allstate Insurance Co.,* 411 F.2d 517, 519-20 (5th Cir. 1969), the former Fifth circuit suggested that the *Cahill* rule "goes even further" than articulated by our Supreme Court and allows "an oral modification of a written contract under circumstances of detrimental reliance even though the contract contains a provision prohibiting its alteration except in writing." In other words, the *Canada* court opined that a claim of "promissory

5

estoppel" was itself sufficient to circumvent a contractual bar to enforcement of an oral modification. *Id.* at 520.

Later, in *Fidelity & Deposit Co. of Maryland v. Tom Murphy Construction Co.*, 674 F.2d 880 (11th Cir. 1982), the Eleventh Circuit (as successor to the Fifth) revisited this issue and clarified that "*Cahill* and *Canada* stand for the proposition that oral modifications are effective despite prohibitive language in the contract only where clear and unequivocal evidence of a mutual agreement is present." *Id.* at 885. This test – if literally applied – would enable the "exception" to swallow the "rule," as the purpose of a "no oral modification" provision is to prevent parties from attempting to prove a subsequent oral "mutual agreement" in the first place, no matter how "unequivocal" the evidence of mutual assent may be. Put another way, the clause is designed to "intercept" such a claim at the outset. *See Yates*, 181 So. at 344. Thus, we interpret the Eleventh Circuit's use of the phrase "unequivocal evidence of a mutual agreement" as merely descriptive of the exacting standard imposed by *Cahill.*

Other appellate opinions have loosely said that "the parties to a contract may modify the written agreement by subsequent oral agreement or course of dealing with one another despite the requirement of a writing in order to modify." *Linear Corp. v. Standard Hardware Co.*, 423 So. 2d 966, 968 (Fla. 1st DCA 1982); *Gallagher v. Dupont*, 918 So. 2d 342, 347 (Fla. 5th DCA 2005); *White v. Ocean Bay Marina, Inc.*, 778 So. 2d 412, 412 (Fla. 3d DCA 2001); *Crosslands Props., Inc. v. Univest Crossland Trace, Ltd.*, 516 So. 2d 320, 322 (Fla. 2d DCA 1987). This standard – if literally applied – would permit a written contract with a "no oral modification" clause to be amended by nothing other than a "subsequent oral agreement" or – *alternatively* – by a "course of dealing." Such an "either - or" approach is indeed applicable in cases involving a claimed oral modification of an oral contract, or of a written contract which does not contain a "no oral modification clause." *St. Joe Corp.,* 875 So. 2d at 381, 382. But *Cahill's* requirements are not disjunctive, and a party seeking to enforce an oral modification in the face of a "no oral modification" clause must show that the parties accepted *and* acted upon the alleged modification (i.e., mutual assent *and* a course of dealing consistent with the alleged amendment) *and* that a refusal to enforce the modification would "work a fraud" because the party seeking to enforce the modification provided – and the resisting party accepted – additional consideration for the modification. *See, e.g., Coral Reef Drive Land Dev., LLC v. Duke Realty Ltd. P'ship*, 45 So. 3d 897, 902 (Fla. 3d DCA 2010) (oral modifications to contracts are permitted despite provisions that all modifications must be in writing "when one party provides additional consideration for the modification accepted by the other party"); *Rhodes v. BLP Assocs., Inc.*,

944 So. 2d 527, 530 (Fla. 4th DCA 2006) ("A written agreement may be modified by the subsequent conduct or course of dealing of the parties," provided the modification is by "mutual consent[] and supported by consideration.").

Despite what may appear to be the judicial choirs' lack of perfect harmony, *Cahill* undoubtedly remains our Supreme Court's governing precedent on the question of when a party may enforce an alleged oral modification of a written contract which expressly requires that any modification be in writing. There also is no doubt that *Cahill* requires that a party pursuing such a claim allege and prove more – indeed much more – than just a "mutual agreement," *or* just "detrimental reliance," *or* just "subsequent conduct," *or* just generalized "inequitable conduct." Rather, a plaintiff must again allege – and eventually prove – that the oral amendment was "accepted and acted upon by the parties in such a manner as would work a fraud on either party to refuse to enforce it." *Cahill*, 90 So. 2d at 918. This requires that a plaintiff plead (and again eventually prove): (a) that the parties agreed upon and accepted the oral modification (i.e., mutual assent); *and* (b) that both parties (or at least the party seeking to enforce the amendment) performed consistent with the terms of the alleged oral modification (not merely consistent with their obligations under the original contract); *and* (c) that due to plaintiff's performance under the contract as amended the defendant received and accepted a benefit that it otherwise was not entitled to under the original contract (i.e., independent consideration). Absent such a showing, the parties will be held to the bargain as negotiated and memorialized in their written agreement.

### Analysis

Applying the *Cahill* standard here, we conclude that the trial court correctly granted summary judgment disposing of Okeechobee's claims. The parties' agreement specified that oral representations were "not binding upon the issuer of the pawn ticket," and that "verbal agreements for additional days are non binding." While it is true – as Okeechobee advocates – that the agreement does not contain a garden variety "no oral modification" clause mandating that *all* modifications of any type be in writing, the contract clearly precludes the enforcement of an alleged oral agreement for "additional days" to pay the debt. To avoid this bargained for proscription, Okeechobee was required to allege facts (and at the summary judgment stage present evidence sufficient to create a genuine issue of material fact) sufficient to invoke *Cahill's* limited exception to the well-settled rule requiring that courts enforce contracts as written.

7

Okeechobee did neither. It instead maintained below – and asserts here – only that the parties orally agreed to the extension, and that, in "detrimental reliance" on E Z Cash's assent, it sold unrelated property in order to raise the funds needed to pay off its loan. The act of selling this property was not actual "performance" of the contract as allegedly modified, and it conferred no benefit on E Z Cash. For that reason, Okeechobee also could not allege or present facts demonstrating that a refusal to enforce this alleged oral amendment would "work a fraud" by enabling E Z Cash to unfairly reap a benefit it was not entitled to under the initial agreement. E Z Cash in fact received nothing more than it initially bargained for – the right to dispose of the collateral in the event of Okeechobee's default.

Because Okeechobee failed to plead any facts – or present any summary judgment evidence – that could trigger the *Cahill* exception, the trial court was obligated to enforce the contract as plainly written. The parties bargained for the right not to be entangled in vexatious and prolonged litigation based upon alleged oral modifications of their agreement, and the trial court's order correctly held them to that bargain.[2]

*Affirmed.*

DAMOORGIAN, C.J., and FORST, J., concur.

\*      \*      \*

**Not final until disposition of timely filed motion for rehearing.**

---

[2] Aside from the pure contract issue, and as previously mentioned, in this case, governing legislation also required that any extensions of the default date be "evidenced by a written memorandum." § 539.001(11)(b), Fla. Stat. (2011). This provision, like the "statute of frauds" contained in Chapter 725, evinces "a legislative prerogative, grounded in a policy judgment that certain contracts should not be enforceable unless supported by written evidence." *DK Arena, Inc.*, 112 So. 3d at 93. The Legislature has mandated that the default date in a pawn agreement (and any extensions thereof) be specified in writing, and it is not our function to question that policy decision. Furthermore, allegations of detrimental reliance of the type pled here, or other generalized equitable claims, may not be used to breathe life into a contract the legislature has declared unenforceable. *Id.* In any event, as we find thatOkeechobee's claims are barred by the terms of the contract itself, we need not further address this issue.