[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-13937
Non-Argument Calendar
_____

D.C. Docket No. 1:14-cv-23284-AOR


ENERGY SMART INDUSTRY, LLC,

Plaintiff - Counter Defendant - Appellant,

versus

MORNING VIEWS HOTELS-BEVERLY HILLS, LLC,

Defendant - Counter Claimant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(September 8, 2016))

Before TJOFLAT, WILSON, and JILL PRYOR, Circuit Judges.

PER CURIAM:

Plaintiff-Appellant Energy Smart Industry, LLC appeals the district court's denial of leave to amend its complaint and award of summary judgment to Defendant-Appellee Morning View Hotels–Beverly Hills, LLC on Energy Smart's claims for breach of contract, unjust enrichment, and quantum meruit.  After thorough review of the record and consideration of the parties' briefs, we affirm.

I

The undisputed facts are as follows.  Energy Smart and Morning View entered into a valid contract (the LED Lighting Retrofit Agreement) under which Energy Smart agreed to retrofit Morning View's hotel with energy-efficient lightbulbs.  The relevant provisions of the LED Lighting Retrofit Agreement read as follows:

> 1.    CONTRACT DOCUMENTS:    The contract documents shall consist of this Agreement, all exhibits attached hereto, any lighting design drawings and specifications and any other documents that are specifically incorporated herein by reference (collectively, the Contract Documents).  The terms of the Agreement include Exhibits hereto, which are incorporated as part of this Agreement by this reference.
>
> 2.    SCOPE OF WORK:    The Agreement shall be construed in accordance with the IESNA lighting design guide, whereby ESI will perform a partial or full lighting retrofit of the Project.  Client will therefore provide to ESI full access to the Project.  ESI's Work shall consist of the tasks enumerated in the Contract Documents together with such ancillary tasks and services which are reasonably inferable there from. . . .

2

3.  CONTRACT PRICE:  Client agrees to pay ESI, a fee for all services and installed property that are the subject of this Agreement, as specified hereafter in Exhibit A. The Client has chosen the 60/40 program where as they will keep 40% of the savings delivered by the lighting retrofit and pay ESI 60% of the savings from the Energy, Maintenance, federal Tax and Utility rebates generated from this project.  The annual electric saving for this Lighting project is $49,493, the amounts [sic] is pursuant to said Exhibit A.  The KW/H cost for calculation of the saving is $0.12.  ESI, payment is annually $44,233.00, in Monthly installments of $3,686.00 per month for 60 months (5 years).  In consideration for the performance of the Work, Client shall pay ESI an amount equal to $3,686.00 per month, each such payment to ESI being payable on the first (1st) day of each month during the 60 months (5) year term of this Agreement following the completion of the Work (hereinafter each such payment called a "Savings Payment") . . . ; provided that such amounts due ESI may be prepaid in whole or in part without premium or penalty but also without discount or reduction of any kind. . . .

. . . .

6.  CHANGE ORDERS:  Any change involving either an increase or decrease in the Savings Payment or the Contract Time may be accomplished only by a written agreement executed by both parties.

. . . .

26.  JURISDICTION:  Venue and jurisdiction for any interpretations or enforcement of this Agreement shall be in Courts of the State of Florida located in Miami-Dade County, Florida.  This Agreement shall be construed and enforced in accordance with Florida law.

Exhibit A identifies, *inter alia*, several areas within the hotel (e.g., lobby), the type of fixture(s) in each area, the pre-installation maintenance cost of those areas each

3

year, and a description of the LED lightbulbs intended to replace the current lightbulbs in each area. Exhibit A also states that the "KWH cost lighting" is $0.12, and the annual "savings" anticipated, excluding maintenance savings, will be $49,493.70. Separately, Exhibit C lists "Mr. C of Beverly Hills (Morning View Hotels-BH, LLC), 1224 Beverwil Drive, Los Angeles, CA 90035" as the property to be retrofitted.

It is also undisputed that the parties agreed to divide the project into five phases. After Energy Smart completed Phase One of the project, it requested payment for the work completed. When Morning Star did not pay, Energy Smart stopped work, deemed Morning Star to be in default, and filed suit for breach of contract, unjust enrichment, and quantum meruit. Energy Smart did not complete any other phase of the project.

Morning View removed the case to federal court and filed a counterclaim for breach of contract. On November 6, 2014, the district court issued a Trial Order, which, in relevant part, set a December 5, 2014, deadline for adding parties or amending pleadings; an April 10, 2015, deadline to complete discovery; and a May 1, 2015, deadline to submit any remaining motions in limine directed to trial evidence. On May 7, 2015, Energy Smart filed a motion to amend its complaint and affirmative defenses. Subsequently, on cross-motions for summary judgment

4

on Energy Smart's claims, the district court entered judgment for Morning Star. Energy Smart filed this timely appeal.

## II

We review a grant or denial of summary judgment de novo. *Fla. Evergreen Foliage v. E.I. Dupont de Nemours & Co.*, 470 F.3d 1036, 1040 (11th Cir. 2006) (per curiam). We review for an abuse of discretion the district court's denial of leave to amend a complaint. *Id.*

## III

The gravamen of the parties' dispute is whether Energy Smart could seek payment at the time it completed each phase of the project, rather than upon completion of all phases of the project. The district court determined that, "because the contract defines 'the Work' as 'the tasks enumerated in the Contract Documents together with such ancillary tasks and services which are reasonably inferable there from,' the 'Work' includes all five phases of the project." *Energy Smart Indus., LLC v. Morning View Hotels-Beverly Hills, LLC*, 112 F. Supp. 3d 1330, 1335 (S.D. Fla. 2015). Additionally, "while Morning View was to make monthly payments of $3,686.00 for a period of five years, the five-year period was to begin 'following the completion of the Work.'" *Id.* (quoting the LED Lighting Retrofit Agreement). Thus, the district court concluded, because Energy Smart had not completed all five phases, Morning Star's contractual obligation to pay the

5

agreed upon amount within a five-year period had not been triggered. *See id.* Moreover, although Energy Smart claimed the LED Lighting Retrofit Agreement had been modified to allow for a different payment schedule, the district court found that Energy Smart had not presented "clear and unequivocal evidence of a mutual agreement" reflecting that change, such that it would work a fraud on Energy Smart not to enforce it, as required by Florida law. *See id.* at 1336–37.

On appeal, Energy Smart argues that the district court's interpretation of the word "Work" in the LED Lighting Retrofit Agreement was unreasonable because (a) there is no evidence on the face of the contract whether the project was a full or partial lighting retrofit of the entire hotel, and (b) the parties' oral agreements and subsequent conduct constituted enforceable modifications to the payment schedule. Additionally, Energy Smart seeks review of the district court's decision to deny Energy Smart leave to amend its complaint, on grounds that leave should have been given because the amendments would have allowed Energy Smart to make a proper showing that the LED Lighting Retrofit Agreement was modified. We address each issue in turn.

A

Under Florida law, a breach of contract arises when there exists (1) "a valid contract"; (2) "a material breach" of that contract; and (3) resulting "damages."[1] *Beck v. Lazard Freres & Co., LLC*, 175 F.3d 913, 914 (11th Cir. 1999) (per curiam). To determine whether a breach occurred, we look to the obligations of each party under the contract. In Florida, "the actual language used in the contract is the best evidence of the intent of the parties and, thus, the plain meaning of that language controls." *Rose v. M/V "Gulf Stream Falcon"*, 186 F.3d 1345, 1350 (11th Cir. 1999). Although a contract may contain an express provision that all modifications must be in writing, Florida law permits enforcement of oral modifications where there is "clear and unequivocal evidence of a mutual agreement," *Fid. & Deposit Co. of Md. v. Tom Murphy Constr. Co.*, 674 F.2d 880, 885 (11th Cir. 1982), that "has been accepted and acted upon by the parties in such a manner as would work a fraud on either party to refuse to enforce it," *Prof'l Ins. Corp. v. Cahill*, 90 So. 2d 916, 918 (Fla. 1956). A plaintiff only meets this standard if she has made a showing

> (a) that the parties agreed upon and accepted the oral modification (i.e., mutual assent); *and* (b) that both parties (or at least the party seeking to enforce the amendment) performed consistent with the terms of the alleged oral modification (not merely consistent with their obligations under the original contract); *and* (c) that due to plaintiff's performance under the contract as

---

[1] For the reasons stated in the district court's opinion, we conclude Florida law governs this contract. *See Energy Smart Indus.*, 112 F. Supp. 3d at 1334.

amended the defendant received and accepted a benefit that it otherwise was not entitled to under the original contract (i.e., independent consideration).

*Okeechobee Resorts, L.L.C. v. E Z Cash Pawn, Inc.*, 145 So. 3d 989, 995 (Fla. Dist. Ct. App. 2014). Absent such a showing, the plain language of the contract controls.

Here, a plain reading of the LED Lighting Retrofit Agreement leads us to the same construction of the contract as the district court reached. The parties contracted for Energy Smart to retrofit, in some manner, those areas of Morning View's hotel that are listed in Exhibit A. The contract clearly states: "ESI's Work shall consist of the tasks enumerated in the Contract Documents together with such ancillary tasks and services which are reasonably inferable there from. . . . [Morning View] agrees to pay ESI, a fee for all services and installed property that are the subject of this Agreement, as specified hereafter in Exhibit A." Whether Energy Smart was to partially or fully retrofit each area listed in Exhibit A appears to be governed by the IESNA lighting design guide, which is not part of the record. But, even if Energy Smart was only obligated to partially retrofit the hotel, partially performing the partial retrofit would still fall short of completing the Work owed under the contract. It is undisputed that Energy Smart only completed Phase One. The LED Lighting Retrofit Agreement directly ties payment to the completion of the Work: Morning View "shall pay [Energy Smart] an amount

8

equal to $3,686.00 per month . . . during the 60 months (5) year term of this Agreement following the completion of the Work." Thus, Morning View did not breach its obligation by declining to pay Energy Smart following completion of one portion of the Work.

We are not persuaded that the LED Lighting Retrofit Agreement was modified by the parties' conduct, such that the plain language should not control. As the district court noted, Energy Smart's amended complaint does not allege that the parties' conduct modified the written contract. *Cf. Okeechobee Resorts*, 145 So. 3d at 995. At most, the record reflects that the parties agreed to divide the Work owed under the contract into phases, and that Morning View made some payments to Energy Smart ahead of the time period in which it was obligated to pay. However, division of the overall Work owed under the contract into phases of completion does not affect the total amount or scope of the Work owed. That organization of the project also does not necessarily alter when the five-year payment period should begin. And, payment ahead of schedule is *consistent with* the LED Lighting Retrofit Agreement, which permits Morning View to "prepa[y] in whole or in part without premium or penalty." Consequently, Energy Smart has not met its burden of showing by clear and unequivocal evidence that the parties mutually agreed payment was due at the conclusion of each phase. *See Okeechobee Resorts*, 145 So. 3d at 995; *Fid. & Deposit Co.*, 674 F.2d at 885.

Accordingly, the plain language of the LED Lighting Retrofit Agreement controls.  Morning View did not breach its obligations under that contract because payment was not owed until all the Work was complete, even if the Work was divided into phases.  It follows, then, that the district court did not err in entering summary judgment for Morning View on Energy Smart's claim for breach of contract.[2]

B

Upon review of the record, we conclude that the district court did not abuse its discretion in denying Energy Smart leave to amend its complaint.   Under Rule 15(a) of the Federal Rules of Civil Procedure, a party who wishes to amend its complaint a second time must seek either the court's leave to do so or the permission of the adverse party.  *See* Fed. R. Civ. P. 15(a)(2).  Although, as a general matter, the Rules indicate that leave to amend should be freely granted, "where a party's motion to amend is filed after the deadline for such motions, as delineated in the court's scheduling order, the party must show good cause why leave to amend the complaint should be granted."  *Smith v. Sch. Bd. of Orange Cty.*, 487 F.3d 1361, 1367 (11th Cir. 2007) (per curiam); *cf.* Fed. R. Civ. P. 15(a)(2).  Here, the record reflects that Energy Smart filed its motion for leave to

---

[2] Because the parties agree that the LED Lighting Retrofit Agreement is a valid and enforceable express contract, Energy Smart is foreclosed from bringing claims of quantum meruit and unjust enrichment.  *See Ocean Commc'ns, Inc. v. Bubeck*, 956 So. 2d 1222, 1225 (Fla. Dist. Ct. App. 2007); *Energy Smart Indus.*, 112 F. Supp. 3d. at 1337.

10

amend more than five months after the Trial Order deadline to do so, without explanation as to why it could not meet the December 5, 2014, deadline—or even the May 1, 2015, deadline.  Therefore, Energy Smart did not make a showing of good cause for failing to comply with the Trial Order and the district court did not abuse its discretion in denying leave to amend.  *See Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1418 (11th Cir. 1998) (per curiam).

IV

For the foregoing reasons, we affirm the decision of the district court.

**AFFIRMED.**