DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**DOUGLAS ANTHONY PERERA**,
Appellant,

v.

**DIOLIFE LLC**, a Florida limited liability company,
Appellee.

No. 4D18-892

[April 24, 2019]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; David A. Haimes, Judge; L.T. Case No. 062016CA006867AXXXCE.

J. David Huskey, Jr. of McGee & Huskey, P.A., Fort Lauderdale, for appellant.

Lida Rodriguez-Taseff and Elan A. Gershoni of DLA Piper LLP (US), Miami, for appellee.

KUNTZ, J.

Douglas Perera appeals the circuit court's final judgment. Final judgment was entered in Diolife LLC's favor on both Diolife's action for declaratory relief and on Perera's counterclaim for breach of contract. The court found the parties orally modified a written contract and, as a result, Diolife did not breach the contract. Alternatively, the court found that if Diolife breached the contract, Perera suffered no damages. We reverse on both conclusions and remand for entry of judgment for Perera.

### *Background*

#### *i. Pre-Lawsuit*

Perera and Diolife entered into a Membership Interest Purchase Agreement ("MIPA"), in which Perera agreed to sell to Diolife a 5% membership interest in a separate company for $200,000. The parties completed this transaction of the MIPA.

The MIPA also gave Perera the option to sell another 5% interest in the separate company in exchange for another $200,000 from Diolife. The option was exercisable in Perera's sole discretion and required Diolife to tender the purchase price. The MIPA required the sale of the additional interest to close on or before March 31, 2016. This agreement to buy another 5% of the separate company also required Diolife to send written notice to Perera when it was ready to close:

> Agreement to Purchase and Sell the Additional Interest. [Diolife] hereby irrevocably covenants and agrees to purchase from [Perera], and [Perera] shall have the option (exercisable in its sole discretion) to transfer, sell and deliver to [Diolife], the Additional Interest in exchange for a total purchase price of Two Hundred Thousand Dollars ($200,000.00) payable in cash at the Second Closing . . . . [Diolife] shall send written notice to [Perera] when it is ready to close on the purchase of the Additional Interest (the "Closing Notice"), and such notice shall be sent no later than March 21, 2016 . . . .

The agreement specifically provided that it could not be amended orally or through the actions of the parties, stating:

> Amendment and Waiver. The provisions of this Agreement may be amended and waived only with the prior written consent of the Seller and the Buyer, and no course of conduct or failure or delay in enforcing the provisions of this Agreement shall be construed as a waiver of such provisions or affect the validity, binding effect or enforceability of this Agreement or any provision hereof.

The parties jointly filed a detailed statement of stipulated facts before trial. They agreed that Diolife did not send the written notice by the March 21, 2016 deadline. Instead, on that day, Diolife's counsel sent Perera's counsel an email stating he understood their clients had "discussed an extension regarding the purchase of an additional 5% membership interest in" the separate company. He suggested "moving the notice and closing date" and attached a draft amended agreement incorporating the proposed new dates.

Two days later, Diolife's counsel again emailed Perera's counsel, stating, "Thanks again for our call yesterday. Can you please provide the discussed offer in writing so my client can have something concrete to review?" Perera's counsel responded, "2.5% for $200,000. Must close by April 15. All other terms of the purchase option remain the same. This is

2

a non-binding offer that only becomes effective upon execution of definitive documents." These terms formed the basis of the purported oral modification of the MIPA: Perera's sale of a 2.5% interest for $200,000, with a closing date of April 15, 2016.

Six days later, Perera sent a text message to Diolife's members stating that the separate company was "raising cash from other big funds and ha[d] commitments for higher valuations," which was why Perera was "pushing" Diolife's members to go through with the purchase before the closing deadline. "Once the deadline passed," however, Perera had to convince other investors to allow Diolife to still pay $200,000 but receive only a 2.5% interest because the company's value was increasing. Perera also stated in the text message: "If you guys are not interested I am OK with it but I am doing my best. Let me know your thoughts."

On April 5, 2016, Diolife's counsel again emailed Perera's counsel, stating he "believe[d] [their] clients have agreed on these terms. Please confirm same . . . ." On April 11, 2016, Perera's counsel emailed Diolife's counsel and attached a "First Amendment to Membership Interest Purchase Agreement," which was signed by Perera and reflected the sale of a 2.5% interest for $200,000. One day later, Diolife's counsel emailed Perera's counsel stating that "[o]ur client has informed us that they do not intend to move forward with the transaction. Thanks."

### ii. The Lawsuit

Diolife brought an action for declaratory judgment to determine whether Perera had a right to claim a breach of the MIPA. Perera filed a counterclaim alleging, among other counts, breach of contract.

After a non-jury trial, the court found for Diolife on its claim for declaratory judgment and on Perera's counterclaim for breach of contract. Perera appeals the court's judgment.

### Analysis

Perera raises three issues on appeal, arguing the court erred: (i) by concluding that the parties entered into an oral modification of the MIPA; (ii) by concluding that Perera did not suffer any damages even if Diolife breached the MIPA; and (iii) by concluding that Diolife did not anticipatorily repudiate the MIPA.

We agree with Perera's first two points on appeal and reverse. As a result of reversing the judgment, we find it unnecessary to address the third issue on appeal.

### i. Diolife Breached the MIPA

The MIPA required Diolife to purchase an additional 5% membership interest in the separate company for $200,000 and to close by March 31, 2016. It is undisputed the additional purchase did not happen by the deadline. As a result, Diolife breached the original contract. But Diolife argued, and the circuit court agreed, that the parties orally modified the MIPA before any breach occurred.

We first address whether the parties orally modified the contract.

When a contract does not address modification, oral modification of the contract is generally permissible. *Okeechobee Resorts, L.L.C. v. E Z Cash Pawn, Inc.*, 145 So. 3d 989, 992 (Fla. 4th DCA 2014) (citations omitted). But "[c]ontracting parties are at liberty to address any issue they see fit, including the question of whether their agreement may be modified at all, and, if so, how." *Id.* at 993 (citation omitted).

Here, the agreement contained a provision barring amendment other than through a writing signed by all parties. When a contract contains such a provision, any alleged oral modification is generally disposed of as a matter of law, and the court should enforce the contract as written. *Id.* But this rule has an exception dating to a 1956 opinion from our supreme court. In *Professional Insurance Corp. v. Cahill*, 90 So. 2d 916 (Fla. 1956), the court explained that even when the contract contains a provision precluding oral modification,

> [a] written contract or agreement may be altered or modified by an oral agreement if the latter has been accepted and acted upon by the parties in such manner as would work a fraud on either party to refuse to enforce it.

*Id.* at 918 (citation omitted). In *Okeechobee Resorts*, we examined the "judicial choirs' lack of perfect harmony" in applying *Cahill* and the various holdings from the courts. 145 So. 3d at 995. But we concluded that despite the various applications of *Cahill*, *Cahill* remains binding precedent. *Id.* We explained that this requires the plaintiff to prove:

> (a) that the parties agreed upon and accepted the oral modification (i.e., mutual assent); and (b) that both parties (or

4

at least the party seeking to enforce the amendment) performed consistent with the terms of the alleged oral modification (not merely consistent with their obligations under the original contract); and (c) that due to plaintiff's performance under the contract as amended the defendant received and accepted a benefit that it otherwise was not entitled to under the original contract (i.e., independent consideration).

*Id.* (emphases removed).

Applying that test to this case, we conclude that the MIPA was not orally modified. Diolife argued the closing deadline was modified and, as a result, it did not breach the contract. And the circuit court agreed, finding the parties agreed—by oral conversations, text messages, and emails—to extend the closing deadline.

But because the MIPA contains a provision precluding oral modification, to establish an oral modification, Diolife needed to establish that the parties acted on the modification and that it would "work a fraud" on Diolife to refuse performance. Diolife failed to meet this burden.

At best, Diolife presented evidence that on the day of the deadline, its counsel sent an email about a potential revision to the MIPA. Days later, after other emails, Perera's counsel emailed Diolife's counsel: ". . . All other terms of the purchase option remain the same. This is a non-binding offer that only becomes effective upon execution of definitive documents." Other messages from Perera included requiring Diolife to pay the same $200,000 for only 2.5% of stock instead of the 5% set forth in the MIPA.

But the parties did not act upon the communication about potentially amending the MIPA. Most significantly, Diolife never acted upon the MIPA or the alleged oral modification because Diolife never sent Perera the required funds. Thus, the *Cahill* requirement that the oral modification must have been "accepted and acted upon by the parties" was not satisfied. *See* 90 So. 2d at 918.

As a result, the MIPA was not amended, and Diolife breached the agreement on March 31, 2016, when it failed to close on the purchase of the additional stock interest.[1]

---

[1] Diolife argues that there were two oral amendments to the MIPA. First, Diolife argues the deadline to close on the purchase of the additional stock was extended. Second, Diolife argues the terms of the stock purchase were

*ii.  Perera Sustained Damages*

The circuit court found that Perera sustained no damages, a conclusion that would require judgment in Diolife's favor even if Diolife breached the contract.  The circuit court determined that because the value of a 5% interest in the company exceeded $200,000 on the day of the breach, Perera did not sustain a loss.  The court effectively used the out-of-pocket measure of damages to conclude, based on Perera's text message, that he sustained no damages.

But, in a breach of contract action, "[a] non-breaching party is entitled to recover the benefit of its bargain under a contract." *Nat'l Educ. Ctrs., Inc. v. Kirkland*, 635 So. 2d 33, 34 (Fla. 4th DCA 1993). "[T]he goal of damages is to place the injured party in the same position in which it would have been had the breach not occurred." *Tucker v. John Galt Ins. Agency Corp.*, 743 So. 2d 108, 111 (Fla. 4th DCA 1999).

Perera was entitled to the benefit of his bargain.  He did not have to search for a potential second investor.  On the date of the breach, March 31, 2016, Perera had a right to receive $200,000 and, instead, he received nothing.  *See Shearson Loeb Rhoades, Inc. v. Medlin*, 468 So. 2d 272, 273 (Fla. 4th DCA 1985) (stating that damages generally "should be measured as of the date of the breach" (quoting *Grossman Holdings, Ltd. v. Hourihan*, 414 So. 2d 1037, 1040 (Fla. 1982))).  His text message bragging about the increased value of the separate company's shares does not change the fact that he was damaged by not receiving the benefit of the bargain.

### *Conclusion*

Diolife breached the MIPA when it did not close on the purchase of the additional 5% interest, and there was no valid oral modification.  As a result, Perera sustained damages in the amount of $200,000.  We therefore reverse the court's judgment and remand for entry of judgment consistent with this opinion.

*Reversed and remanded.*

---

modified.  But Diolife failed to make any payment to Perera; it did not pay Perera by the original deadline or the allegedly extended deadline. And when the allegedly extended deadline came, Diolife failed to make payment pursuant to the original terms or the allegedly amended terms.  Modified or not, Diolife was in breach.

GERBER, C.J., and TAYLOR J., concur.

*     *     *

***Not final until disposition of timely filed motion for rehearing.***